UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. KEVIN, | ) | Civil Action No. 2:21-cv-766 |
| Plaintiff, | ) | |
| | ) | Electronically Filed |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | COMPLAINT |
| UNITED STATES STEEL CORPORATION | ) | |
| EXECUTIVE MANAGEMENT SUPPLEMENTAL | ) | |
| PENSION PROGRAM, J. MICHAEL WILLIAMS, | ) | |
| ADMINISTRATOR, AND UNITED STATES | ) | |
| STEEL CORPORATION, | ) | |
| Defendants. | | |

NATURE OF ACTION

1.     This is an action brought pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., by Plaintiff who retired from

employment with United States Steel Corporation ("USS") on or about March of 1998.

2.     Plaintiff, on or about March, 1998, was informed by Mr. John Koloski

(General Manager at Gary Works), Mr. Wilheim (USS President) and other USS executives

that he had been designated a "Member" under the USX Corporation Executive Management

Supplemental Pension Program ("USX Supplemental Pension Program").  The USX

Supplemental Pension Program was an unfunded plan for a select group of management or

highly compensated employees, such as Plaintiff, that provides an additional retirement

1

benefit based (in part) on bonuses paid to Plaintiff while he was a designated Member of the Program.

3.     Plaintiff was informed that the USX Supplemental Pension Program was established in order to retain qualified executives of USX Corporation ("USX") (the American holding company incorporated in 1986 to oversee the four independent operations units, including USS).  The purpose of the Program was to provide certain employees of USX (and its Subsidiary Companies) with additional pension benefits to entice key executives/managers to continue their employment with USX or its Subsidiary Companies (including USS) until they are eligible to retire.

4.     Plaintiff (who had worked at USX/USS/USSK for over 42 years) inquired of USS in the latter part of 2019 what his benefits would be under the USS Pension Plan and the USX Supplemental Pension Program.  On October 28, 2019, Mr. Tucker Kulp (Sr. Manager-Benefit Strategy & Administration at USS) informed Plaintiff that a letter was found in Plaintiff's file which was addressed to Plaintiff from James T. Carney, Vice-President and Administrator of the USS Pension Fund, dated February 23, 2000.  The letter indicated that, as a result of a change in job position as of December 1, 1999, plaintiff was "de-designated" from coverage under the USX Supplemental Pension Program as of March 1, 2000.  *See* Exhibit A (4) and (9).

5.     This was the first time that Plaintiff ever saw the letter from Mr. Carney. Plaintiff never received the letter, even though it was addressed to his home.  The letter was

not sent by registered or certified mail and Plaintiff has not been shown proof of mailing by USS.

6.      On November 11, 2019, Mr. Kulp forwarded a letter to Plaintiff, indicating that he had been de-designated from participation in the Plan, effective on March 1, 2000, because his position was changed from Division Manager-Hot Strip Mill Rolling at Gary Works to Manager Commercial Product Development on December 1, 1999.  Thus, Plaintiff's benefits were only based on bonuses paid to Plaintiff from July 28, 1998 through February 2000 and his continuous service from July 5, 1978 (hire date) through February 2000. Plaintiff never worked as the Manager – Commercial Product Development and had expected to return to his Division Manager job after the Special Assignment.  *See* Exhibit A (6).

7.      On January 13, 2020, Plaintiff appealed the decision of Mr. Kulp to limit his benefits under the USX Supplemental Pension Program to bonuses paid from July 28, 1998 through February 2000 and his continuous service through February 2000.  He stated, *inter alia*, that: (i) he never received the February 23, 2000 letter from James Carney notifying him of his de-designation from the USX Supplemental Pension Program, effective March 1, 2000; (ii) he never was informed by anyone at USX or USS during his tenure that he was not accruing benefits under the USX Supplemental Pension Program after March 1, 2000; (iii) he does not know why he was de-designated as a member under the USX Supplemental Pension Program; (iv) he was asked in 1999 by his boss (Mr. Thomas Cera) to take a Special Assignment to manage the Cost Reduction Program at Gary Works and he accepted the temporary Special Assignment; (v) neither Mr. Kevin nor Mr. Cera was made aware by anyone at USX or USS that the acceptance of the Special Assignment would result in Plaintiff

3

being de-designated under the USX Supplemental Pension Program; (vi) had Mr. Cera and Mr. Kevin been so notified, the Special Assignment would not have been offered to or accepted by Mr. Kevin; (vii) other employees were given Special Assignments without losing their rights to participate in the Program; and (viii) after the Special Assignment was completed, Plaintiff served as the Head of the Pickle Department at Gary Works, Plant Manager at Double Eagle Electro Galvanizing Line in Dearborn, Michigan, and General Manager of Finishing Operations at U.S. Steel Kosice (in Kosice, Slovakia) in January 2008, all positions which should have warranted him being re-designated as a Member of and participant in the USX/USS Supplemental Pension Program.  Mr. Kevin provided numerous letters in support of his appeal from various former officers and managers.  *See* Exhibit A (7).

8.     Plaintiff's appeal was denied by Mr. Michael Williams (the Plan Administrator) in a letter, dated February 25, 2020.  Mr. Williams relied on Section 2 of the USX Supplemental Pension Program plan document which stated that an employee will be eligible to participate if he is "a key manager designated by name as a 'Member' under this Program by the Compensation Committee of USX Board of Directors."  Mr. Williams further stated that "when Mr. Kevin's position changed to Manager-Commercial Product Development, he was specifically excluded by name from participation in the Program at the May 30, 2000 meeting.  Based on USS's records, Mr. Kevin was notified by letter of the exclusion from participation in the Program and he acknowledged that the letter was sent to the correct address."  *See* Exhibit A (8).

9.     In a letter to Plaintiff, dated August 25, 2020, a copy of USS's Secretary's Certificate (dated August 24, 2020) was attached.  The Secretary's Certificate describes the

Resolution adopted by the USX Board of Directors' Compensation Committee on May 30, 2000.  The Resolution called for the Supplemental Pension Program "to be adjusted, effective immediately, to include certain non-executive participants in the Program… and to exclude Thomas J. Kevin."  *See* Exhibit A (3).

## JURISDICTION AND VENUE

10.     **Subject Matter Jurisdiction.**  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and ERISA § 502 (a) and (e), 29 U.S.C. §1132 (a) and (e).

11.     **Personal Jurisdiction.**  This Court has personal jurisdiction over Defendants because Defendants transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.

12.     **Venue.**  Venue is proper in this district pursuant to ERISA § 502 (e) (2), 29 U.S.C. § 1132 (e) (2), because it is the District where: (i) the Plan is administered; (ii) the alleged breaches took place; and (iii) Defendants reside in and/or may be found in.

## PARTIES

13.     Plaintiff Thomas J. Kevin is a former employee of USX/USS/USSK and was a participant in the USX/USS Supplemental Pension Program.  He retired from USSK in June 2020 as General Manager of Transport and Commercial Support at USSK (in Kosice, Slovakia). He currently maintains a residence in Kosice, Slovakia and in Palos Heights, Illinois.

14.     USX Corporation Executive Management Supplemental Pension Program ("the USX Supplemental Pension Program") is an "employee benefit plan" within the meaning of ERISA § 3 (3), 29 U.S.C. § 1002 (3), and is employee pension benefit plan within the

5

meaning of ERISA § 3 (2) (A), 29 U.S.C. § 1002 (2) (A), that was established and maintained by USX Corporation, a former holding corporation that was incorporated to oversee the operations formerly directed by USS. USX was renamed USS in 2001 after a spin-off of its energy business and other assets from its core steel business.  Upon information and belief, the USX Supplemental Pension Program was renamed the United States Steel Corporation Executive Management Supplemental Pension Program (the "USS Supplemental Pension Program") sometime thereafter.

15.     Defendant United States Steel Corporation (USS) is an American steel producer headquartered in Pittsburgh, Pennsylvania with production operations in the United States and Eastern Europe.  USS is the sponsor of the USS/USX Supplemental Pension Program within the meaning of ERISA § 3 (16) (B), 29 U.S.C. § 1002 (16) (B).  USS is headquartered in Pittsburgh, Pennsylvania.

16.     Defendant J. Michael Williams is the Administrator (within the meaning of ERISA § 3 (16) (A), 29 U.S.C. §1002 (16) (A)) of the USS Supplemental Pension Program. He is also the current Vice President – Administrator of the United States Steel and Carnegie Pension Fund.

**FACTUAL ALLEGATIONS**

17.     USX established the USX Supplemental Pension Program sometime before 1998.  One purpose of the Program is and has been to enable USX and its Subsidiaries to attract and retain high-level qualified employees.

18.     ERISA §401 (a) (1), 29 U.S.C. §1101 (a) (1), exempts "top hat" plans from compliance with the fiduciary provisions of ERISA, including the requirement that the terms

of the Plan be set forth in a written instrument as required by ERISA §402 (a) (1), 29 U.S.C. §1102 (a) (1).  While ERISA does not require a "top hat" plan to have its terms set forth in a writing, the sponsor of a "top hat" plan may choose to set forth all or some of the terms thereof in a formal plan document.

19.     Mr. Kulp (Sr. Manager-Benefit Strategy & Administration) sent Plaintiff, in a letter dated August 25, 2020, copies of the USX Supplemental Pension Program plan document, as amended July 28, 1998 (the date that Mr. Kulp claims Plaintiff became a participant in the Program) and January 1, 1999 (the date that Mr. Kulp claims Plaintiff's participation in the Program ceased).  Mr. Kulp also forwarded to the Plaintiff the current version of the USS Supplemental Pension Program, as amended and restated December 31, 2015.  *See* Exhibit A (1), (2) and (5).

**The USX Supplemental Pension Program**

20.     The USX Supplemental Pension Program plan documents, as amended on July 28, 1998 and January 1, 1999 respectively, describe eligibility requirements for the Program as follows: (i) an employee of USX, a Subsidiary Company or a joint venture who is either "a member of the Executive Management Group as established from time to time by the USX Board of Directors or a key manager designated by name as a 'Member' under this program by the Compensation Committee of the USX Board of Directors."  A Member of the Program will be eligible to receive Supplemental Pension benefits if he retires or otherwise terminates employment under conditions of eligibility for a pension under the USS Pension Fund (other than a deferred vested pension).  However, if a Member retires prior to the age

of 60 without the consent of USX, he will not be entitled to any benefits.  *See* Exhibit A (1) and (2).

21.     The benefits under the USX Supplemental Pension Program are calculated by multiplying "Average Earnings" by a percentage which is equal to the sum of 1.54% for each year of continuous service and each year of allowed service.  "Average Earnings" is defined in the plan documents as "total bonuses paid or credited to the Member pursuant to the USX Corporation Annual Incentive Compensation Plan…with respect to the three calendar years for which total bonus payments… were the highest out of the last ten consecutive calendar years immediately prior to the calendar year in which retirement or death occurs (or, if earlier, the date the Member ceased to accrue continuous service for the purpose of determining the amount of benefits under this program) divided by thirty-six."  The plan document also provides that: (i) bonus payments… will be considered as having been made for the calendar year in which the applicable services were performed rather than for the calendar year in which the bonus payment was actually received; and (ii) any bonus payable for the calendar year in which retirement occurs will be used if such bonus produces greater average earnings.  *See* Exhibit A (1) and (2).

22.     The USX Supplemental Pension Program plan documents also provide that: (i) no benefits payable with respect to a key manager… shall be based on any bonuses paid to such key manager prior to the date of his designation for coverage; and (ii) service that occurs after the employee ceases to… be designated as a Member under this Program by the USX Compensation Committee will not constitute "continuous service."  *See* Exhibit A (1) and (2).

**The USS Supplemental Pension Program**

23.     The terms of the USS Supplemental Pension Program plan document, as amended effective December 31, 2005, are similar to those of the USX Supplemental Pension Program.  There were some differences – (i) eligibility for key managers would be designated by the Compensation and Organization Committee of the USS Board of Directors; (ii) a Member will be eligible to receive retirement benefits if he retires or otherwise terminates employment after completing fifteen years of continuous service; (iii) Members must terminate employment after age 60, unless USS consents to the termination of employment prior thereto; and (iv) USS consent is not required if termination prior to age 60 is on account of death or involuntary termination without cause.  *See* Exhibit B.

24.     The terms of the USS Supplemental Pension Program plan document, as amended effective December 31, 2015, are similar to those of the USS Supplemental Pension Program as amended December 31, 2005.  There were some changes including the following: (i) benefits that vested on or before December 31, 2004 shall remain payable in accordance with the terms of the Program in effect on December 31, 2004;  (ii) effective March 1, 2011, the Program was closed to new Members; (iii) for individuals who became members on or after July 31, 2006, they will not be eligible for supplemental pension benefits if their employment is terminated within 36 months of becoming a Member unless USS consents thereto; (iv) all accrued benefits under the Program were frozen effective as of the Freeze Date (January 1, 2016); however, benefits earned prior to the Freeze Date, but paid after the Freeze Date shall be included in determining the frozen accrued benefits; (v) service earned after the Freeze Date shall be counted solely for purposes of satisfying the age 60

9

requirement, the 15-year service requirement or the 36-month requirement.  *See* Exhibit A (5).

**Plaintiff's Initial Participation in USX Supplemental Pension Program**

25.     On or about March 1998, Plaintiff was informed by Mr. John Koloski (General Manager at Gary Works), Mr. Paul Wilheim (President of USS) and several other corporate executives from Pittsburgh that he had been designated a "Member" under the USX Supplemental Pension Program.  Mr. Koloski and other corporate executives briefly explained the Program to him, described how the benefits would be calculated, and asked him to sign a form evidencing his participation in the Program.  Mr. Kevin requested a copy of the plan document or a written description of the Program, but was told by Mr. Wilheim that he did not have to worry about the details of the USX Supplemental Pension Program until he nears retirement since the benefits thereunder would change over the course of his employment based on the increases in the amount of his bonuses and his years of continuous services.   What was not explained to Plaintiff was that he was designated a "Member" because of his job title as Division Manager and, if he did not hold that title, he could be excluded from the Program after his eligibility was established.  Plaintiff also was never told that, even though he was designated a Member, he could lose his membership if de-designated by the Compensation Committee of the USX Board of Directors.

26.     Plaintiff, at that time and thereafter, understood that the USX Supplemental Pension Program was established in order to attract and retain qualified executives and managers for USX and its Subsidiaries.  The steel industry was very competitive in the late 1990s and USX/USS was losing executive and management talent to

10

other steel companies that were recruiting USX executives and managers by offering higher

salaries and other attractive compensatory benefits.

27.     While employed at USX/USS/USSK, Plaintiff had been asked by several

other employers and recruiters to leave USX/USS/USSK and join the competitor steel

companies as a manager or executive.  Each time Plaintiff declined because he believed he

would be able to receive enhanced benefits under the USX/USS Supplemental Pension

Program as long as he worked until age 60.

**Plaintiff's Appeal of the Denial of Benefits Under the USX/USS Supplemental Pension**
**Program**

28.     Paragraph 7 summarizes the arguments that Plaintiff made in disputing the

denial of full benefits under the USX/USS Supplemental Pension Program.  In support of his

arguments, he submitted several letters from various supervisors which were not considered

in the Plan Administrator's denial of Plaintiff's appeal.  *See* Exhibit A (7).

29.     Mr. Thomas Cera (who was Plaintiff's direct supervisor at Gary Works)

indicated in his letter, dated November 20, 2019, that he requested Plaintiff to take the

Special Assignment to manage the Cost Reduction Program at Gary Works.  Mr. Cera

explained that he was not aware that there was a possibility of Plaintiff being de-designated

from the USX/USS Supplemental Pension Program.  Had he known about the change, he

would not have put Plaintiff on Special Assignment and jeopardized his benefits.  Mr. Cera

also stated that he was aware of other management employees who were placed on Special

Assignment during his tenure at USS (1981 through 2003), but was not aware of a single case

in which such management employee was de-designated from coverage under the Program. *See* Exhibit A (7).

30.     Mr. George Babcoke also submitted a letter, dated November 20, 2019, in which he stated, *inter alia*, that he was extremely surprised that the de-designation of Plaintiff had occurred as a result of acceptance of a Special Assignment request.  In Mr. Babcoke's time as a senior manager with USS/USSK, he had made many requests (at least 50) to key managers to take on critical Special Assignments and, in his experience, such acceptance never resulted in penalties being imposed on the key managers and, in most cases, additional compensation was extended to those key managers.  Mr. Babcoke also stated that, when he returned to Gary Works in 2001 as General Manager, he should have been made aware of Plaintiff's de-designation from the Program during Plaintiff's annual performance review.  When Plaintiff moved to Detroit, upon Mr. Babcoke's request, and held a leadership position at Double Eagle Coating, reporting to Mr. Babcoke, he should have been included in the USX/USS Supplemental Pension Program and the fact that Plaintiff was not in the Program should have been brought to Mr. Babcoke's attention.  If it had been brought to his attention, Mr. Babcoke would have corrected the oversight immediately.  Mr. Babcoke also indicated that he asked Plaintiff to take-on a key positon at USSK in 2008. During Mr. Babcoke's tenure at USSK, he oversaw Plaintiff's work and believed Plaintiff was one of the most critical leaders at USSK.  Mr. Babcoke was never informed that Plaintiff was not included in the Program while employed at USSK and, had he been made aware, he would have corrected the problem immediately.  *See* Exhibit A (7).

31.     In the Plan Administrator's decision of the review of the adverse benefit determination, there was no discussion concerning the assertions made by Plaintiff nor those contained in Mr. Cera's and Mr. Babcoke's letters which were directed at the decision of the USX Compensation Committee to de-designate Plaintiff as a Member of the Program and the lack of notice by Defendants USX/USS and the Plan Administrator to Plaintiff and his superiors at the time of the de-designation and during his tenure so that they could have made efforts to reverse the adverse decision.  Also, the Plan Administrator did not address the allegations that Plaintiff should have been re-designated under the Program after conclusion of the Special Assignment.  *See* Exhibit A (8).  The failure to do so demonstrates that the claim denial was not made in good faith and was unreasonable.

32.     The Plan Administrator's failure to take into account Plaintiff's assertion in his appeal and the letters submitted in support thereof resulted in Plaintiff being denied a full and fair review of the decision of denial of his claim under ERISA § 503 (2), 29 U.S.C. §1133 (2).

33.     Upon Plaintiff's retirement from USS in June 2020, he received a distribution of $139,000 under the USS Supplemental Pension Program based on his bonuses in 1998 and 1999 and his years of service from 1978 through February 2000.  Had Plaintiff received accrued benefits through December 31, 2015 (when the Program was frozen), his benefits under the Program would have been substantially more.  Instead of considering two bonuses and his years of service through February 2000, his higher bonuses and increased years of service through 2015 would have been used in the formula to calculate his benefits. Plaintiff requested information from USS and the Plan Administrator on the calculation of his

benefits under the Program and what benefits he would have received had he not been de-designated from the Program; however, they declined to provide such information.

<u>COUNT I</u>

<u>CLAIM FOR BENEFITS PURSUANT TO ERISA §502 (a) (1) (B)</u>

33.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

34.     ERISA §502 (a)(1)(B), 29 U.S.C. §1132 (a)(1)(B), authorizes a Plan Participant to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

35.     As a "top hat" plan, the USX/USS Supplemental Pension Program is a unilateral contract under federal common law and the common law of contracts whose terms are enforceable under ERISA §502 (a)(1)(B), 39 U.S.C. §1102 (a)(1)(B).  As a unilateral contract, the Program constituted an offer to Plaintiff which he accepted by his participation in the Plan and providing his services to USX/USS/USSK until his retirement after age 60.   The standard of review of the Plan Administrator's decision by the Court is *de novo,* without regard to whether administrative "discretion" is explicitly written into the top hat plan.

36.     Even though Plaintiff requested the Plan document or a summary thereof, he was not provided with it.  In fact, he was told by Mr. Wilheim that he need not worry about his benefits until he neared retirement since the benefits would increase over the course of his employment based on the number of years employed at retirement and the amount of bonuses he received during his tenure.  Based on these assurances, Plaintiff

reasonably believed that, as a Member of the USX/USS Supplemental Pension Program, he would continue to accrue benefits thereunder until he retired after the age of 60.  What was not explained to Plaintiff at the time the offer and acceptance were made was that Plaintiff could be de-designated by the USX Compensation Committee based on a change in his position (or for any other reasons).

37.     Plaintiff signed a form acknowledging his participation in the Program, but has been unable to locate it.  Plaintiff requested a copy of the form from the Plan Administrator, but the Plan Administrator informed him that he too was unable to find it in the files.  Plaintiff avers that the participation form provided to him upon his designation as a Member in the Program did not contain any information about the possibility of de-designation by the USX Compensation Committee or that his designation was based upon his position as Division Manager – Sheet Products at Gary Works.

38.     The Plan Administrator's decision on appeal was based solely on a three sentence letter from Mr. James Carney, dated February 23, 2000, apparently found in Plaintiff's file in Pittsburgh.  Even though the letter was addressed to Mr. Kevin at his address, Mr. Kevin did not receive the letter.  If indeed he had received it, he would have addressed the situation immediately and not waited until he was retiring.  The Plan Administrator improperly dismissed Plaintiff's assertion that he did not receive the letter and failed to provide Plaintiff with proof of mailing and delivery of the letter.  *See* Exhibit A (4).

39.     Plaintiff's supervisors never received a copy of the February 23, 2000 letter from Mr. Carney to Plaintiff.  Both Mr. Cera and Mr. Babcoke said that they had not been informed of Plaintiff's de-designation, but should have been as his supervisors, and had they

been so advised, they would have corrected the adverse action immediately.  *See* Exhibit A

(7).

40.     The purported reason given for Plaintiff's de-designation by the USX

Compensation Committee was that his position was changed from Division Manager – Hot

Rolling Mill at Gary Works to Manager – Commercial Products Development and, as a result,

Plaintiff's participation in the USX Supplement Pension Program ended on March 1, 2000.

*See* Exhibit A (4) and (6).  However, the reason is contrived.  Plaintiff never served as Manager

- Commercial Product Development.  Mr. Cera (Plaintiff's supervisor) never requested that

Plaintiff's official title be changed to Manager when he asked Plaintiff to take on the Special

Assignment.  Plaintiff had initially expected that he would return to his prior positon.

41.     Plaintiff has held many high level management positions over his career at

USX/USS/USSK.  Upon information and belief, other key managers who were designated

Members of the USX/USS Supplemental Pension Program had their positions changed over

the course of their careers and accepted Special Assignments, but were not de-designated by

the Compensation Committee as a result thereof.  Plaintiff, in his appeal to the Plan

Administrator, argued that, if the reason he was taken out of the USX Supplemental Program

was that he assumed his Special Assignment and his title was changed, other employees who

had participated in the Program and took on Special Assignments were treated more

favorably and allowed to continue to participate under the Program.  The Plan Administrator

never addressed these assertions which were supported by Mr. Cera's and Mr. Babcoke's

letters.  *See* Exhibit A (7).  The different treatment of similarly situated beneficiaries under

the Plan is unreasonable, not made in good faith and unsupported by the evidence.

42.     Defendants USS and the Plan Administrator did proffer a copy of USS's Secretary's Certificate, dated August 24, 2020. The Secretary's Certificate describes the Resolution, adopted by the USX Board of Directors' Compensation Committee on May 30, 2000.  The Resolution called for the USX Supplemental Pension Program to be "adjusted, effective immediately, to include certain non-executive participants in the Program, as indicated in the statement submitted to the meeting and to exclude Thomas J. Kevin." *See* Exhibit A (3).  No reason for Plaintiff's exclusion was specified in the Resolution.  No minutes or reports of other information relied upon by the USX Compensation Committee have been provided to Plaintiff.  Neither Plaintiff nor his supervisor were apprised of Plaintiff's exclusion from the Program, so they were not able to challenge the de-designation when it occurred or thereafter until Plaintiff's retirement.

43.      The James Carney letter was dated three months before any action was taken by the USX Compensation Committee.  Upon information and belief, the USX Compensation Committee only confirmed actions that had already been taken by someone at USX for unrevealed reasons.  *See* Exhibit A (4).

44.     The Plan Administrator, in rendering his decision, failed to address the arguments made by Plaintiff in his appeal and the evidence submitted in support thereof. S*ee* Exhibit A (8).  The Plan Administrator only addressed the terms of the Program which referenced de-designation by the USX Compensation Committee; however, neither the plan documents nor any other documents relating to the USX Supplemental Pension Program delineated any circumstances that would cause exclusion of designated Members.   Plaintiff's appeal challenges the lack of notice of the de-designation and the purported reason for such

exclusion from the Program.  The Plan Administrator's specious reason for Plaintiff's de-designation is also contradicted by the designation of non-management employees to participate in the Program at the same time that Plaintiff was being excluded.  *See* Exhibit A (3).  If non-management employees were designated as Members, then Plaintiff (as a Manager) should have been allowed to continue as a Member.

45.     The Plan Administrator's reason for denial of Plaintiff's appeal also did not address why Plaintiff was not re-designated as a Member of the USX/USS Supplemental Pension Program once he returned to other management positions warranting participation in the Program after the Special Assignment ended.  *See* Exhibit A (8).  The failure of the Plan Administrator to address this argument is also grounds for reversal of his decision.  The Plan Administrator simply responded that Plaintiff had not been re-designated by the USX Compensation Committee.

46.     The grant of discretion to the Plan Administrator in the USX/USS Supplemental Pension Program is subject to the implied duty of good faith and fair dealing (i.e., he must exercise his discretion fairly and reasonably in order to comply with his good faith obligations).  If the Plan Administrator's reasoning (i.e., the USX Committee has an unfettered right to de-designate a Member from the Program for any reason or no reason) is allowed to stand, it would render the contract nothing more than an illusory promise to Plaintiff.

47.     Defendants have an inherent "conflict of interest" in the Plan Administrator's denial of benefits to Plaintiff because the amount of benefits owed to Plaintiff had he not been de-designated from the Program is substantial.  Because the

USS/USX Supplemental Pension Program was an "unfunded" top-hat plan, benefit payments made to Members come directly from USS's asset.  Upon information and belief, the conflict of interest adversely affected the integrity of the Administrator's decision-making process.

48.     As a result of Defendants' actions, Plaintiff has not received all the benefits to which he was entitled under the USX/USS Supplemental Pension Program.

**COUNT II**

**CLAIM FOR EQUITABLE RELIEF PURSUANT TO ERISA 502(a)(3) TO REDRESS VIOLATIONS OF AND TO ENFORCE THE TERMS OF THE PLAN**

50.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

51.     ERISA § 502 (a) (3), 29 U.S.C. §1102 (a) (3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provisions… of the terms of the Plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of … the terms of the Plan, or (ii) to enforce any provisions… of the terms of the terms of the Plan.

52.     Plaintiff alleges a promissory estoppel claim against Defendants if it is determined that Plaintiff cannot recover under ERISA § 502 (a) (1) (B) as alleged in Count I. Plaintiff will offer proof demonstrating: (1) material misrepresentations; (2) reasonable and detrimental reliance upon the representations; and (3) extraordinary circumstances resulted from the misrepresentations and the failure of Defendants' to inform Plaintiff and his supervisors of the de-designation and his loss of a significant amount of money.

53.     When Plaintiff initially was advised that he had been designated a Member of the USX Supplemental Pension Program, he was informed that he would receive benefits as long as he worked for USX/USS until he turned age 60.  He reasonably relied on this representation given to him from Mr. Wilheim and Mr. Koloski and believed the information was accurate and worthy of being relied upon.  He, upon agreeing to participate in the Program, continued his employment with USX/USS/USSK thereafter for thirty-two (32) years, despite having been approached by at least four steel companies to work for them (SDI Steel, Worthington Steel, National Steel, Mittal Steel).  The fact that neither he nor his supervisors were ever informed of his exclusion from the Program during those 32 years and the matter involved a significant amount of money constitutes "extraordinary circumstances."

54.     When Plaintiff sought his benefits upon his retirement, he learned for the first time that he had been de-designated in February 2020 as a Member of the USX/USS Supplemental Pension Program.  Plaintiff and his supervisors never received Mr. Carney's letter (or a copy thereof) informing Plaintiff of his exclusion under the Program.  Neither Plaintiff nor his supervisors were informed in any other manner that he had been de-designated in February 2000.  Plaintiff, upon information and belief, alleges the Defendants kept the information about his de-designation concealed from Plaintiff (and his supervisors) over the course of his employment.  Had Plaintiff (and his supervisors) been aware of the de-designation, they could have challenged the adverse action sooner or requested his re-designation.  Plaintiff also could have accepted another job in the industry that provided more generous retirement benefits.

55.     Plaintiff requested a copy of the plan document for the USX Supplemental Pension Program, but did not receive it.  In fact, he was informed he didn't need to see it or worry about his benefits until he retired.  No one explained to him at the time he entered the Program that he could lose his Membership in the Program after he had been designated and the circumstances that could/would result in his exclusion under the Program.  This is material information that should have been conveyed to Plaintiff.  Instead, Plaintiff was lulled into believing based on representations made at the time he entered the USX Supplemental Pension Program that his Membership would continue and his benefits would accrue through his retirement as long as he retired at or after age 60.

56.     Plaintiff received information on or about November/December 2015 that the USX/USS Supplemental Pension Program was frozen as of January 1, 2016.  Based upon his receipt of this notice, Plaintiff reasonably believed that the accrual of his benefits ceased as of January 1, 2016, but he still remained a Member of the Program for retirement purposes.   Otherwise, Plaintiff does not understand why he was provided with the notice of the Program freeze.

57.     As a result of Plaintiff's detrimental reliance on the material misrepresentations of Defendants, Plaintiff is entitled to the unreduced benefits accruing until his retirement under the USX/USS Supplemental Pension Program.

58.     Defendant USS was unjustly enriched by failing to pay Plaintiff the unreduced benefits accruing through his retirement.

**COUNT III**

**CLAIM FOR EQUITABLE RELIEF PURSUANT TO ERISA § 502 (a) (3) TO REDRESS ERISA § 510 VIOLATIONS FOR WRONGFUL INTERFERENCE WITH PLAINTIFF'S CLAIM FOR FULL BENEFITS**

59.     Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

60.     ERISA § 502 (a) (3), 29 U.S.C. § 1102 (a) (3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA … or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA … or (ii) to enforce any provisions of ERISA…

61.     ERISA § 510, 29 U.S.C. § 1140, provides that "[i] t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

62.     Defendant USS (formerly USX) improperly: (i) de-designated Plaintiff from the Program; (ii) failed to provide (even upon Plaintiff's request) the plan document of the USX Supplemental Pension Program; (iii) "demoted" Plaintiff to  a Manager – Commercial Product Development position after he accepted a Special Assignment as requested by his supervisor, Mr. Cera; (iv) assigned such position to Plaintiff even though it was never intended that he hold the position; (v) failed to timely notify Plaintiff or his supervisor of the adverse consequences of Plaintiff accepting the Special Assignment; (vi) treated Plaintiff differently than other similarly situated participants by de-designating him; and (vii) never re-

designated him after the conclusion of the Special Assignment when he assumed positions warranting his participation in the Program.

63.     Upon information and belief, the above-described adverse actions were taken against Plaintiff with the specific intent to interfere with his benefits under the USX/USS Supplemental Pension Program and directly resulted in a substantial diminution of his retirement benefits.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and request the Court award the following relief:

A.  Declaring that Plaintiff is entitled to receive benefits under the USX/USS Supplemental Pension Program that had accrued through the date of his retirement;

B.  Declaring that Defendant Plan Administrator abused his discretion in denying Plaintiff his full benefits under the Program;

C.  Declaring that Defendants USX/USS violated ERISA §510 by interfering with Plaintiff's benefit rights by causing his de-designation and failing to redesignate him under the Program;

D.  Determining that Defendants are estopped from de-designating Plaintiff from the Program because Plaintiff and his supervisors never received notice of such action and USS (formerly USX) mislead Plaintiff by its material representations into reasonably believing that he would receive full benefits under the Program if he continued his employment through age 60, the retirement age;

E.  Awarding Plaintiff a judgment against Defendants in an amount that is calculated under the Program as accrued through the date of Plaintiff's retirement less the amount that he actually received upon retirement;

F.  Requiring Defendants to pay pre-judgement interest or disgorge any profits they have earned on benefits wrongfully withheld and/or untimely distributed to Plaintiff, whichever is greater;

G.  Awarding post-judgment interest;

H.  Requiring Defendants to pay reasonable attorney's fees and costs of this action pursuant to ERISA § 502 (g) (1), 29 U.S.C. § 1132 (g) (1); and

I.  Awarding, declaring or otherwise providing Plaintiff such other relief under ERISA § 502 (a), 29 U.S.C. §1132 (a), or any other applicable law, that the court deems proper and just.


Date: June 10, 2021


/S/  Térese M. Connerton
PA Bar No: 319715
LAW OFFICE OF TÉRESE M. CONNERTON
2605 Nicholson Road, Suite 2103
Sewickley, PA  15143
Telephone:  (724) 934-8600
Facsimile:  (724) 934-8601
Email: terry@connertonlaw.com
**Attorney for Plaintiff**