**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

THOMAS J. KEVIN,               )
                                   )
                                   )     Civil Action No. 2:21-cv-00766
           PLAINTIFF,      )
   V.                       )     Honorable Cathy Bissoon
                                   )
UNITED STATES STEEL CORPORATION )     *ELECTRONICALLY FILED*
EXECUTIVE MANAGEMENT         )
SUPPLEMENTAL PENSION PROGRAM, J. )
MICHAEL WILLIAMS,           )
ADMINISTRATOR, AND UNITED     )
STATES STEEL CORPORATION,     )
                                   )
           DEFENDANTS.     )

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

More than twenty years ago, the Compensation Committee of the Board of Directors of United States Steel Corporation ("USS")[1], adopted a resolution amending the Executive Management Supplemental Pension Program (the "Program") to exclude Plaintiff Thomas J. Kevin as a Member of this top hat plan. This action, fully within the Committee's authority to designate key managers as Members per the terms of the Program, ended Plaintiff's entitlement to accrue more benefits under the Program but did not impact benefits that had already accrued between 1998 and 2000 when he was designated a Member. When Plaintiff retired in 2020, he received all benefits he had accrued under the Program.

Plaintiff now asks this Court to go back in time 21 years to reverse the Committee's action removing him from the Program, and order that the Program pay additional benefits to Plaintiff.

---

[1] As noted in Plaintiff's Complaint, USS had a predecessor Company, USX Corporation. Defendants will refer to USX where necessary, but otherwise will identify the entities as USS given the commonality between Plaintiff's allegations about the Companies.

But no terms of the Program exist—then, or as amended—that entitle Plaintiff to the additional benefits he seeks.  The crux of Plaintiff's claim is his objection to the Committee's decision in 2000 that he contends was unfair.  In doing so, he argues that he either should not have been de-designated from the Program—despite the Committee's sole authority to do so—or that he should have been re-designated later because of what he feels were important contributions he made to the Company, even though only the Committee could take that action and it did not.  Neither remedy is available to Plaintiff pursuant to any statutory theory of relief provided by ERISA, nor does the law permit the Court to simply ignore the unambiguous terms of the Program.

As explained to Plaintiff when he challenged this decision pre-suit, the award of more benefits Plaintiff asks for is unavailable to him.  The relief Plaintiff seeks—to supplant the Committee and Plan Administrator and have the Court make its own determination that he should be designated as a Member against the terms of the Program—would not have been available to him in 2000 or at any time since.  Even looking at the allegations in the light most favorable to him, Plaintiff's Complaint should be dismissed because the law does not allow an award of benefits to which Plaintiff is not entitled.

## I.      FACTS ALLEGED IN THE COMPLAINT

Plaintiff was designated as a "Member" of the Program in March 1998 when he was working as Division Manager-Sheet Products at Gary Works.  Doc. No. 1, ¶ 2, Doc. No. 1-3, pp. 26-27.  Company representatives explained the Program to Plaintiff, explained how benefits would be calculated, and asked him to sign an acknowledgment of his participation.  *Id.* at ¶ 25.  Plaintiff knew that his designation was controlled by the Compensation Committee and that benefits under the Program could change throughout his employment.  *Id.*

The Program is a "top hat" plan exempt from complying with the fiduciary provisions of ERISA.[2]  *Id.* at ¶ 18.  Although not required to be, the Program's terms are set forth in plan documents.  Doc. No. 1, Exhibits 1, 2, and 5.  According to the terms:

> The Vice President-Administration, United States Steel and Carnegie Pension Fund, is responsible for the administration of this Program.  The administrator shall decide all questions arising out of and relating to the administration of this Program.  The decision of the administrator shall be final and conclusive as to all questions of interpretations and application of the Program.

Doc. No. 1-3, Exhibit 5, p. 7.

Consistent with ERISA's requirements for top hat plans, only a select group of management or highly compensated employees were eligible for the Program, which provides additional retirement benefits based on bonuses paid during Members' designation periods.  *Id.* at ¶¶ 2, 26.  The goal of the Program was to retain key executives and managers through their retirement.  *Id.* at ¶ 3.  The Company could at any time modify, amend, or terminate any or all provisions of the Program.  *Id.* at Doc. No., pp. 7, 11.

When Plaintiff was designated as a Member, in 1998, the Program provided that "[t]he term 'Member' as used herein means an employee of USX Corporation (hereinafter 'the Corporation') or a Subsidiary Company who is (a) a member of the Executive Management Group as established from time to time by the USX Board of Directors or (b) a key manager designated by name as a 'Member' under this Program by the Compensation Committee of the USX Board of Directors."  Doc. No. 1-3, p. 5.

---

[2] As will be explained, a "top hat plan" is a species of ERISA plan that covers only a select group of management or highly compensated employees. *See, e.g., Goldstein v. Johnson & Johnson*, 251 F.3d 433, 435 (3d Cir. 2001).  As explained by the Third Circuit, it is a "unique animal" which evolved from the view that management-level employees do not require the same level of protection as other employees.  Congress thus exempted top-hat plans from the funding, vesting, and fiduciary rules that ERISA normally imposes on other benefits plans.  *Id.* at 442.

Shortly after his designation, Plaintiff changed jobs when he accepted a move to manage the Cost Reduction Program at Gary Works. *Id.* at ¶¶ 7, 29. Plaintiff admits his new job had fewer responsibilities and required "less time at work." *Id.* at Doc No. 1-3, pp. 29-32. Then Plan Administrator, James Carney, wrote to Plaintiff in February 2000, informing Plaintiff he was being de-designated as a Member of the Program because of his change in job position. *Id.* at Doc. No. 1-3, p. 15. Carney told Plaintiff he would not accrue any more benefits under the Program. *Id.*

On May 30, 2000, the Compensation Committee adopted a resolution formally adjusting the Program to include new participants and to exclude others. *Id.* at ¶ 9. The Committee specifically de-designated Plaintiff by name in the resolution. *Id.* USS's Corporate Secretary certified the resolution in August 2020. *Id.* at Doc. No. 1-3, p. 13. Plaintiff was never later re-designated as a Member by the Committee. *Id.* at Doc. No. 1-3, pp. 26-27.

When Plaintiff was de-designated as a Member, in February 2000, the term "Member" was defined as: "An employee of the Corporation, a Subsidiary Company, or a joint venture is a Member of [the Program] if he is (a) a member of the Executive Management Group as established from time to time by the USX Board of Directors, or (b) a key manager designated by name as a 'Member' under this Program by the Compensation Committee of the USX Board of Directors." Doc. No. 1-3, p. 9. A nearly identical definition of the term "Member" applied when Plaintiff was initially designated in 1998.

The Program, as amended, has always defined the term "Member" in this way; the last amended iteration of the Program states: "An employee of the Corporation, a Subsidiary Company, United States Steel and Carnegie Pension Fund, or a joint venture is a Member of [the Program] if he is: (a) a member of the Executive Management Group as established from time to time by the United States Steel Corporation Board of Directors, or (b) a key manager designated

4

by name as a 'Member' under this Program by the Compensation and Organization Committee of the United States Steel Corporation Board of Directors (the 'Committee'). Effective March 1, 2011, this Program is closed to new Members." Doc. No. 1-3, p. 17. Benefit accrual under the Program was frozen in January 2016, and Plaintiff admits he received that notice. *Id.* at ¶¶ 33, 56.

In October 2019, nearing retirement, Plaintiff contacted USS to determine the sum of his benefit entitlement, which was calculated to include benefits accrued while Plaintiff was designated as a Member of the Program. *Id.* at ¶ 4. Plaintiff was provided with a copy of the February 2000 letter from Plan Administrator Carney informing him that he was de-designated as a Member under the Program as of March 2000. *Id.* at ¶ 4.

In January 2020, Plaintiff appealed the determination of his entitlement to Program benefits. *Id.* at Doc. No. 1-3, pp. 29-32. Plaintiff's appeal claimed that (1) he did not see the February 2000 letter detailing his de-designation until he appealed the decision, though he admits it was mailed to the proper address and offered several scenarios under which his wife or neighbors may have discarded it, (2) no one at USS told him that he stopped accruing benefits as of March 2000, (3) he would have rejected the job change offered by his boss in 1999 had he known he would be de-designated, (4) his boss, Thomas Cera, did not know that the offered job change would cause Plaintiff's de-designation, and (5) he should have been re-designated once he took on different positions that he contends were key management roles. *Id.* at ¶ 7.

He included letters from Cera and other members of management who said they did not know Plaintiff was de-designated and they would have supported his designation as a Member. *Id.* The Plan Administrator responded to Plaintiff's appeal and informed him that he was ineligible for more benefits because of his de-designation under the terms of the Program. *Id.* at ¶ 8.

Plaintiff retired from USS in June 2020 and received the benefits he was entitled to under the Program for his years as a Member.  *Id.* at ¶ 33.

Plaintiff now brings three claims pursuant to ERISA seeking to recover additional benefits he alleges should have accrued between 2000 and 2015, the period he was not a designated Member of the Program: (1) a Section 502(a)(1)(b) claim challenging the Plan Administrator's interpretation of the terms of the Program and the determination that he cannot receive additional benefits; (2) a Section 502(a)(3) claim asking the Court to impose equitable relief, namely to estop the Program from de-designating him in 2000 and to determine that he has a right to receive additional benefits because he detrimentally relied on statements made about the Plan and did not understand that he could be de-designated from the Program at any time; and (3) a Section 510 claim alleging that USS took adverse action against him to interfere with his entitlement to Program benefits.

## II.    ARGUMENT

The Court should dismiss Plaintiff's Complaint in its entirety for failure to state a claim under ERISA entitling him to relief.  His Section 502(a)(1)(b) claim fails as a matter of law because he cannot show he was entitled to benefits according to the unambiguous Program terms. Plaintiff's Section 502(a)(3) claim seeks equitable relief that would require the Court to impose duties upon the Plan Administrator and Program that are not required by ERISA, and to effectively re-write the Program terms.  Plaintiff's Section 510 claim fails because he has not identified the requisite "adverse action" and Plaintiff can only allege a Section 510 claim against USS—not the Program or the Plan Administrator.  But Plaintiff's Complaint makes it clear that the one "adverse action"—his voluntary job change in 1999 re-cast as a "demotion"—was not taken with the specific intent to interfere with his entitlement to benefits, as required.  In any event, Plaintiff's

alleged Section 510 claim accrued, at the latest, in 2000, and is long since time-barred under the applicable statute of limitations.

### A.     Plaintiff must plead plausible claims for relief.

In his Complaint, Plaintiff must show that he is entitled to relief. Fed. R. Civ. P. 8.  While Rule 12 requires the Court to take Plaintiff's factual averments as true, Plaintiff must allege facts that "raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  Plaintiff's Complaint must show that there is a "reasonable expectation that discovery will reveal evidence of the necessary element[s]" of his causes of action. *Id.* at 234. The Supreme Court has instructed litigants that "labels and conclusions" are not enough and, instead, all elements must be supported by underlying facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Where documents are relied on in, or appended to, the complaint, the Court may consider those materials when determining whether a complaint states a plausible claim.  *In re Rockefeller Ctr. Props. Sec. Lit.*, 184 F.3d 280, 287 (3d Cir. 1999).

### B.     Plaintiff did not meet the unambiguous conditions of the Program to accrue the benefits he seeks requiring the dismissal of Count I.

Plaintiff cannot state a claim under Section 502(a)(1)(b), because he "must demonstrate that the benefits are actually 'due'; that is, he . . . must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). A Section 502(a)(1)(b) claim can only challenge the interpretation of ERISA plan terms if those terms are ambiguous and "capable of more than one objectively reasonable interpretation." *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, 578 F. App'x 89, 94 (3d Cir. 2014), *quoting Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011).

Because it is a "unique animal" exempt from many of the substantive provisions of ERISA, courts must treat a top hat plan, like the Program, as a unilateral contract, governed by general

principles of the federal common law of contract.  *Sikora v. UPMC*, 2:12-cv-1860, 2017 U.S. Dist. LEXIS 3244, *10-12 (W.D. Pa. Jan. 10, 2017), *citing Goldstein v. Johnson & Johnson*, 251 F.3d 433, 436 (3d Cir. 2001).  An employee seeking benefits under a top hat plan cannot receive them unless he has satisfied each of the binding conditions precedent to the receipt of benefits.  *Hooven*, 465 F.3d at 575.

Courts review the terms of a top hat plan *de novo* pursuant to ordinary principals of contract interpretation but are also required to give full effect to provisions in a top hat plan that grant discretionary authority to the plan administrator to interpret ambiguous plan terms.  *Goldstein*, 251 at 436.  A plan administrator's exercise of discretion to interpret an ambiguous plan term is, as Plaintiff suggests in his Complaint, subject to the covenant of good faith and fair dealing that requires discretion to be exercised reasonably.  *Id.* at 444.  That said, Plaintiff pleads no allegation showing that the Program Administrator interpreted an ambiguous term of the Program.

Rather, Plaintiff questions how the Program terms define "Member," and tries to effectively erase that unambiguous condition precedent to an entitlement of benefits under the Program—namely that a key manager must be "**designated by name** as a 'Member' under this Program by the Compensation Committee[.]"  Doc. No. 1-3, p. 9.  In effect, Plaintiff seeks to re-write the terms of the Program to remove the operative language "designated by name as a 'Member' under this Program by the Compensation Committee" to find ambiguity in the interpretation of the term "key manager."  But that attempt to find ambiguity in an unambiguous condition precedent to entitlement to benefits under the Program must be rejected because it would render meaningless the remaining terms defining "Member."  *Grove v. Johnson Controls, Inc.*, 176 F. Supp. 3d 455, 475 (M.D. Pa. 2016) (courts must interpret contracts to give reasonable meaning and effect to all off its provisions), *citing* 11 Williston on Contracts § 32:5 (4th ed.).

8

Even though he must, Plaintiff does not allege that the Program is ambiguous—his claim rests on his allegation that the Compensation Committee had to exercise its exclusive authority to "designate by name" the key managers who would be Members of the Program based on some objective standard of the type of position held at USS that warrants being considered a "key manager." *See* Doc. No. 1, ¶ 44 ("neither the plan documents nor any other documents relating to [the Program] delineated any circumstances that would cause exclusion of the designated Members[.]" and "The Plan Administrator's specious reason for Plaintiff's de-designation is also contradicted by the designation of non-management employees to participate in the Program at the same time that Plaintiff was being excluded.")

In other words, Plaintiff is not claiming the terms of the Program are ambiguous or challenging an action taken by the Plan Administrator under his authority to interpret plan terms— the only actions he can take pursuant to Section 502(a)(1)(b).  He is challenging the authority of the Committee to "designate by name" which key managers it desired to entice with enhanced retirement benefits available pursuant to the plan—because Plaintiff does not believe that criteria the Committee used when he was de-designated, and later not re-designated, fairly considered his importance to USS as compared with others who were designated Members.

Plaintiff admits that he was de-designated by that Committee in 2000 and attaches several documents showing that decision was made according to the Program's terms. *Id.* at ¶ 54. He concedes that the de-designation excluded him from the Program under its terms. *Id.*  This undisputed de-designation rendered Plaintiff ineligible to accrue additional Program benefits unless he was re-designated by the Compensation Committee and identified by name as a "Member."  Although Plaintiff seeks benefits from the time he was de-designated through his retirement, he acknowledges that at no point was he re-designated as "Member."

9

Despite these key admissions, in Count I, Plaintiff asks this Court to ignore the Program terms and that he cannot show any violation of these terms and award him benefits associated with his work from 2000 to 2015. At best, the Complaint shows that Plaintiff considers himself to have held "key manager" positions.  He submits that his boss and others felt his role in the company warranted designation in the Program.  But those allegations do not satisfy the terms of the Program—binding conditions precedent that Plaintiff must meet before he is entitled to benefits.

Plaintiff's allegations about an alleged lack of notice that he was de-designated as a Member (although he admits in his appeal that the letter was mailed to the correct address, *see* Doc. No. 1-3, p. 29) and that, if he and/or his bosses had been told that he was not a Member of the Program, they would have somehow "corrected the problem immediately" are unavailing. Even if all those things are taken as true, Plaintiff cannot state beyond mere speculation that he would have been re-designated.

The Compensation Committee had the sole authority under the terms of the Program to "designate by name" the key managers who are Members of the Program.  Any purely hypothetical scenario under which Plaintiff and/or his bosses could have or would have persuaded the Committee to so designate Plaintiff after March 2000 does not prove that any Program terms were violated making Plaintiff entitled to additional benefits that can be awarded under Section 502(a)(1)(b).  As a result, Plaintiff's Section 502(a)(1)(b) claim must be dismissed for failure to state a claim for which relief can be granted.

**C.      *Plaintiff cannot demonstrate that he is entitled to the equitable relief requested requiring dismissal of Count II.***

Plaintiff next asks this Court, in the alternative, to step in for the Compensation Committee and reverse its decision twenty-one years ago de-designating Plaintiff as a Member.  In support of this position, which would strip the Program of its meaning and treat Plaintiff in a way contrary to

the Program terms, Plaintiff alleges that he and his supervisors did not know of his de-designation and thought that he would receive "full benefits" if he continued to work for USS until he was 60 years old.  *Id.* at Prayer for Relief, ¶ D.

But Plaintiff does not establish the essential elements of the equitable claim and cannot recover benefits defined by contract based on fairness principles or alleged procedural deficiencies not required by ERISA.

### 1. *Plaintiff cannot advance a Section 502(a)(3) claim for equitable relief that overrides plan language because claims based on disagreements about interpretation of plan terms are exclusively brought under Section 502(a)(1)(b).*

Plaintiff cannot state his Section 502(a)(3) claim for equitable relief if (1) he can show no contractual right to the payment of the benefits he now seeks, (2) his requested relief would divest the Compensation Committee of the authority specifically granted to it by the unambiguous terms of the Program and replace it with some non-existent criteria that Plaintiff alleges should be implied in the Program, and (3) his claim is not based on any duty or obligation found under ERISA.  Plaintiff has not stated a claim for appropriate equitable relief that properly considers the "special nature and purpose of employee benefit plans," and that respects the "policy choices reflected in the inclusion of certain remedies and the exclusion of others" making it subject to dismissal.  *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

Plaintiff's asserted justification for the equitable relief he requests is that Plaintiff and his supervisors never received notice of his de-designation from the Program.  Doc. No. 1, ¶ 54.  But ERISA does not require that a plan participant's supervisor be provided with notice about eligibility for benefits under a top hat plan.  Likewise, ERISA contains no requirement that top hat plan sponsors ensure not just that notices about eligibility for top hat plan participants be sent, but that they also must affirmatively ensure that such notices are received and that plan participants

understand every term of the plan.  Allowing plaintiffs to proceed with claims for this type of equitable relief would turn on its head the express Congressional policy embodied in the purposeful inclusion and exclusion of different requirements for different plans.    Plan administrators of top hat plans have no fiduciary duties to participants like the duties suggested by Plaintiff here.

At its essence, Plaintiff's Complaint rests upon his theory that the Plan Administrator's interpretation of the Program is unfair and incorrect because Plaintiff was not designated as a Member during years in which he feels he held positions within the company important enough to warrant his designation.  Section 502(a)(3) is simply not a vehicle for any plaintiff who believes that a plan interpretation was not fair.  The exclusive statutory remedy for a plaintiff who disagrees with a determination of benefits based on a plan interpretation is Section 502(a)(1)(b), which is foreclosed to Plaintiff as discussed in § B, *supra*. *See McCutcheon*, 569 U.S. at 99-101 (finding that while Section 502(a)(3) authorizes equitable relief, it does not permit courts to apply equitable doctrines or rules of decisions to override plan language).

### 2.  *Plaintiff has not adequately pled equitable estoppel.*

Assuming Plaintiff could establish that the relief he seeks is not exclusively available under Section 502(a)(1)(b) and that the equitable relief sought is appropriate and can be awarded by this Court, under limited circumstances Section 502(a)(3) permits beneficiaries of ERISA plans "to obtain . . . appropriate equitable relief . . . to redress [ERISA] violations or . . . to enforce any provisions of [ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3).

In limited circumstances not present here, courts within the Third Circuit have held that Section 502(a)(3) allows beneficiaries to proceed under an equitable estoppel theory to recover benefits, but only if they can establish (1) a material representation, (2) reasonable and detrimental reliance on the representation, and (3) extraordinary circumstances. *Burnstein v. Retirement*

*Account Plan for Employees of Allegheny Health Educ. and Research Foundation*, 334 F.3d 365, 383 (3d Cir. 2003).

In Count II of his Complaint, Plaintiff asserts a purported Section 502(a)(3) claim against Defendants, alleging that he "will offer proof demonstrating: (1) material misrepresentations; (2) reasonable and detrimental reliance upon the representations; and (3) extraordinary circumstances . . . . ." Doc. No. 1, ¶ 52.  The Court should ignore these legal conclusions and instead examine the factual allegations to see whether Plaintiff has plausibly pled enough to establish each element. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

When those conclusory statements are set aside, Plaintiff is left with an allegation that the Program was explained to him when he was first designated but he was told that he "did not have to worry about the details" of the Program until he neared retirement because the benefits "would change over the course of his employment."  Doc. No. 1, ¶ 25.  Plaintiff claims that he asked for a copy of the Program documents or a written summary plan description, but it was not given to him. *Id.*  He also asserts that he was not told that he could be de-designated by the Compensation Committee. *Id.*  As a final point, Plaintiff presents letters from people who worked for USS to prove that, had they been given notice that Plaintiff was de-designated as a Member, they would have petitioned for Plaintiff's re-designation. *Id.* at Doc. No. 1-3, pp. 29-32.

Taken as true and given a favorable slant to Plaintiff, these averments are not enough to show that fairness demands that Plaintiff be given the requested additional Program benefits. Plaintiff cannot show that he was misled about his entitlement to benefits in the Program; he received all benefits he was promised and earned under the Program terms.  Plaintiff offers nothing

beyond an allegation that an otherwise true statement led him to wrongfully conclude that he would be entitled to more benefits under the Program.  Even taken as true, there was no material misrepresentation made to him.  Nor does he adequately allege "extraordinary circumstances" as required to support an estoppel claim pursuant to Section 502(a)(3).  Whether styled as Plaintiff's alleged "promissory estoppel" theory asserting a material *mis*representation or as equitable estoppel, Plaintiff has not adequately pled a claim asserting equitable relief available under Section 502(a)(3) because he cannot establish its required elements.

### a. *Plaintiff has not pled a material misrepresentation.*

The alleged material "misrepresentation" on which Plaintiff bases his Section 502(a)(3) claim occurred when he was "advised that he had been designated a Member of [the Program]." Doc. No. 1, ¶ 53.  Plaintiff alleges he was "informed that he would receive benefits as long as he worked for USX/USS until he turned age 60."  That information about the Program was accurate. Plaintiff received benefits based on his time as a Member of the Program upon his retirement after age 60.  *Id.* at ¶ 33.  According to Plaintiff, no promise was made that he would be eligible to accrue benefits his entire career.

Instead, Plaintiff's Section 502(a)(3) claim hinges on "what was not explained to Plaintiff," specifically, "that he was designated a 'Member' because of his job title as Division Manager and, if he did not hold that title, he could be excluded from the Program after his eligibility was established" and that "Plaintiff was also never told that, even though he was designated a Member, he could lose his membership if de-designated by the Compensation Committee of the USX Board of Directors."  *Id.* at ¶ 25.

Plaintiff asserts that he requested, but was never given, plan documents for the Program. *Id.*  He does not allege that he was told there were no plan documents or that he could not have

them, rather he alleges he was told that he "did not have to worry about the details of [the Program] until he near[ed] retirement since the benefits thereunder would change over the course of his employment[.]" *Id.*  Importantly, Plaintiff does not claim that he was led to believe that plan documents did not exist for the Program, or that he requested documents from the Plan Administrator and was denied.  And he makes no allegation that he was given any information that was inconsistent with or contradictory to the terms of the Plan—Plaintiff's allegations only show he was not told about all of the terms of the Plan in his initial conversations with his bosses after being designated as a Member.

These allegations, even with the benefit of the presumption of truth required at the pleading stage, are not material representations or misrepresentations that can support a Section 502(a)(3) claim.  *Cf.* 29 U.S.C. § 1101 (providing that top hat plans are exempt from certain substantive requirements of ERISA, including fiduciary duties and the requirement of written plan documents.).  A statement, even if misleading, is not enough to support an equitable claim unless "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision" or "a harmful decision regarding benefits."  *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 229 (3d Cir. 2009).

If Plaintiff's Section 502(a)(3) claim depends on his allegations that he was not provided with complete information in 1998 when he was designated as a Member of the Program, Plaintiff's only remedy for that claim resides in Section 502(a)(1)(A)—which provides that plan participants can bring civil actions if specific information requested about the plan is withheld, the remedy for which is to be furnished with the requested information.  29 U.S.C. § 1132(a)(1)(A) and (c).  Otherwise, ERISA plan participants "have a duty to inform themselves of the details provided in their plans."  *Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1016 (3d Cir. 1997).

Top hat plans, in particular, are specifically exempted from most of ERISA's substantive protections afforded to participants in other ERISA plans, because the participants in top hat plans have to be "a select group of management or highly compensated employees" found as a matter of policy to possess greater bargaining power in the terms and conditions of their employment and compensation.  *See Sikora*, 2017 U.S. Dist. LEXIS 3244 at *20 ("Participants in a top hat plan, like [plaintiff], are assumed to be high-level executives—financially sophisticated employees who possess significant bargaining power to understand and negotiate the particular terms and rights of their compensation packages.").

Plaintiff's claim for equitable relief is inconsistent with the policy decisions of Congress on top hat plans.  He is not entitled to equitable relief when the allegations in his Complaint show he, at best, remained ambivalent about what was in plan documents he knew existed for twenty years but failed to seek diligently.

### b.  *Plaintiff has not pled detrimental reliance.*

Even if Plaintiff was told information about the Program that could be a material representation or a material misrepresentation, he has not adequately pled that he reasonably relied on that information to his detriment by remaining employed by USS after he was de-designated. Courts examining whether detrimental reliance has been sufficiently pled look to two subfactors: reasonableness and injury.  *Curcio v. John Hancock Mut. Life Ins.*, 33 F.3d 226, 237 (3d Cir. 1994).

Plaintiff cannot recover if he unreasonably failed to act. Plaintiff's Section 502(a)(3) claim is wholly premised on information he alleges he did not know:  he did not know he could be de-designated (Doc. No. 1, ¶ 25); he did not know he was de-designated in March 2000 (*Id.* at ¶ 54); and "[n]o one explained to him at the time he entered the Program that he could lose his Membership in the Program after he had been designated and the circumstances that could/would

result in his exclusion under the Program." *Id.* at ¶ 55.  Although Plaintiff alleges he asked about plan documents for the Program in 1998, he allowed more than twenty years to pass without ever making another inquiry or formal request for them.  *Id.*

Because ERISA plan participants "have a duty to inform themselves of the details provided in their plans[,]" *Jordan*, 116 F.3d at 1016, and because Plaintiff's Section 502(a)(3) claim is not based on information that he was given about the Program—but is based on alleged actions he could have or might have taken based on information he never knew or understood about the Program and did not actively seek to clarify for himself—he has not adequately pled that it was reasonable for him to rely on the incomplete information he was provided.  Especially because, as a top hat plan participant, Plaintiff is presumed to possess a higher level of sophistication about financial matters.  *Sikora*, 2017 U.S. Dist. LEXIS 3244 at *20.  Plaintiff's reliance was not reasonable under these circumstances.

### c. *Plaintiff has not pled extraordinary circumstances.*

Although there is no specific one-size-fits-all definition of "extraordinary circumstances," the Court of Appeals for the Third Circuit has summarized the issue as such: "extraordinary circumstances can arise where there are affirmative acts of fraud, where there is a network of misrepresentations over an extended course of dealing, or where particular plaintiffs are especially vulnerable." *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 303 (3d Cir. 2008) (internal citations omitted).

Again, the crux of Plaintiff's Section 502(a)(3) claim, including his basis to assert "extraordinary circumstances," is his misplaced contention that he and his supervisors were owed extra, specific information (not required to be provided pursuant to ERISA, unless requested, nor under the Program) about the Program, and not that he, as a Program participant, had an obligation

to inform himself of the terms and conditions required to realize benefits under the Program.  *Cf. Jordan*, 116 F.3d at 1016.   Plaintiff alleged no facts to support a finding of extraordinary circumstances and instead concludes that "upon information and belief . . . Defendants kept the information about his de-designation concealed[3] from Plaintiff (and his supervisors) over the course of his employment[,]" because "the matter involved a significant amount of money."  Doc. No.1, ¶¶ 53-54.  His own admissions that he could have received the letter telling him that he was de-designated show that these conclusions should be ignored, leaving him with, at most, alleged administrative lapses.

The Third Circuit consistently rejects "estoppel claims based on simple ERISA reporting errors or disclosure violations."  *Kurz*, 96 F.3d at 1553-54.  Instead, Section 502(a)(3) claims must allege extraordinary circumstances "amounting to fraud or bad faith."  *Jenkins v. Union Labor Life Ins. Co., Inc.*, 900 F. Supp. 2d 534, 552 (E.D. Pa. 2012).  If the Third Circuit rejects estoppel claims based on "reporting errors or disclosure violations" where ERISA imposes a fiduciary duty related to such reports or disclosures, it follows that an estoppel claim based on the same type of alleged conduct cannot adequately state a claim for a top hat plan that is not even subject to such requirements.  29 U.S.C. § 1101; *see also Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) ("we have consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents.").

Plaintiff does not allege that any representatives of Defendants gave him inaccurate information or stated anything about the Program that was not true.  The "summaries" given in the

---

[3] Plaintiff does not specifically allege fraudulent conduct, but to the extent that his allegation of purposeful concealment of his de-designation from the Program purports to set forth an allegation sounding in fraud, Plaintiff has to plead it with particularity and cannot rely on a statement set forth "upon information and belief."  Fed. R. Civ. P. 9.

context of this top hat plan were given by alleged statements by Mr. Wilheim and Mr. Koloski—
and those summary statements did not have to provide Plaintiff with all of the information in the
plan documents for Defendants to avoid liability for estoppel.  Doc. No. 1, ¶ 25.  Plaintiff's
allegations of "extraordinary circumstances" because he and his supervisors were unaware of his
de-designation from the Program and because the matter "involved a significant amount of money"
do not come close to setting forth the type of intentional, bad-faith conduct required.  *Jordan v.
Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997) ("extraordinary circumstances
generally involve acts of bad faith on the part of the employer[.]").

### D.    Count III, Plaintiff's claim under Section 510 for alleged wrongful interference with his claim for benefits, must be dismissed.

Plaintiff alleges that Defendants wronged him in varied ways to support his Section 510
claim for interference with his entitlement to benefits under the Program.  Yet he only pleads one
potential "adverse action" taken by USS, the only Defendant against whom he can raise this claim:
an alleged "demotion" in 1999 (although his change in position at the time was voluntarily
accepted and not taken at the direction of USS).  And despite claiming that this change was taken
to deprive him of benefits, he admits that his supervisor did not intend to impact his designation
as a Member and he willingly accepted the position meaning that no discriminatory action
occurred.  In any event, his claim based on such alleged adverse action accrued more than twenty
years ago and has long been time-barred showing that this claim must be dismissed with prejudice.

### 1.    Plaintiff has not alleged the requisite intentional adverse action.

Section 510 does not make it illegal to change an employee's work in all instances, even if
it makes an employee ineligible for benefits; only "unscrupulous" conduct is prohibited.  *Haberern
v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1502-1503 (3d Cir.
1994).  And the "unscrupulous conduct" must be tied to an adverse action that affects the

19

employee-employer relationship.  *See McMurtrie v. Speciality Minerals*, Inc., CIVIL ACTION NO. 09-cv-944, 2009 U.S. Dist. LEXIS 73856, *14, *citing Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (Section 510 ERISA claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits.")

The grounds for a wrongful interference claim under Section 510 are narrow because a plan sponsor retains the "unfettered right to alter its promises" for benefits so long as it follows the procedures set forth in the plan.  *Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe R.R. Co.*, 520 U.S. 510, 514 (1997).   Mere denial of benefits is not enough to adequately plead an adverse action supporting a Section 510 claim for interference.  *Id.*

To adequately plead an adverse action under Section 510, Plaintiff must show Defendants intentionally discriminated against him in a manner affecting the employer-employee relationship. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987).   A *prima facie* case of interference with benefits under Section 510 requires a plaintiff to show (1) prohibited employer conduct, (2) taken to interfere, (3) with the attainment of any right to which the employee may be entitled.  *Becker v. Mack Trucks*, 281 F.3d 372, 379 (3d Cir. 2002), *citing Gavalik*, 812 F.2d at 852.

Plaintiff alleges that these are the "adverse actions" taken by Defendants in violation of Section 510:

- De-designating him from the Program;
- Failing to provide a plan document for the Program;
- A "demotion" to a Manager-Commercial Product Development Position after accepting a Special Assignment as requested by his supervisor, Thomas Cera;
- Assigning Plaintiff to the Manager-Commercial Product Development Position;
- Failing to tell Plaintiff and/or his supervisor that this step-down would cause his de-designation;
- Treating Plaintiff differently than other Members of the Program he alleges were similarly situated; and

- Never re-designating Plaintiff as a Member of the Program when he assumed positions that he argues warranted his designation as a Member.

Doc. No. 1, ¶ 62.

The only alleged "adverse action" pled by Plaintiff that could sustain a plausible Section 510 claim for interference is his alleged "demotion" and change in position when Thomas Cera offered him a "Special Assignment."  The other "adverse actions" alleged in Plaintiff's Complaint relate specifically to administration of the Program and interpretation of Program terms.  Relief for those actions is not properly stated under Section 510 but is instead confined to claims brought under Section 502(a).  *Rea v. Hershey Co. 2005 Enhanced Mut. Separation Plan*, CIVIL No. 1:CV-06-1920, 2007 U.S. Dist. LEXIS 17783, *10-11 (M.D. Pa. Mar. 12, 2007) (citing decisions holding that plaintiff must allege an adverse change to the plaintiff's employment status); *see also Haberern*, 24 F.2d 1491, 1503, *quoting McGath v. Auto-Body N. Shore, Inc.*, 7 F.3d 665 (7th Cir. 1993) ("This means that a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.").

That said, Plaintiff's claim still fails because he has not pled that Cera or USS changed his position with the intent to interfere with his entitlement to benefits.  *Richardson v. CSS Indus.*, Civil Action No. 08-3900, 2009 U.S. Dist. LEXIS 42377, * 7 (E.D. Pa. May 13, 2009) (granting motion to dismiss Section 510 failure to promote claim because the plaintiff had alleged no facts to support that the defendant failed to promote him "*for the purpose of* interfering with any of his employee benefits.") (emphasis original).

In fact, within the documents Plaintiff appends to his Complaint as exhibits, he includes a statement from Thomas Cera, who requested that he fill a different position within USS in 1999. Based on the statement provided by Cera, Cera was unaware that the proposed change in Plaintiff's

position could, or would, lead to the Compensation Committee de-designating Plaintiff as a Member of the Program. As a result, the "adverse action" alleged—Plaintiff's change in position in 1999—cannot have been intentionally taken to interfere with his entitlement to benefits under the Program.

Plaintiff also tries to prop up his claim by challenging the de-designation itself and saying he should have been re-designated when he held different positions. But the Compensation Committee's decision to de-designate Plaintiff and subsequent decisions to not re-designate Plaintiff when he moved into different roles are plan decisions—not adverse employment actions that can be challenged under Section 510.

> **2.      *Plaintiff's Section 510 claim is time-barred because he waited two decades to file a claim subject to a two-year statute of limitation.***

Plaintiff's Section 510 is time-barred in any event because his potential claim accrued long ago when Plaintiff alleges he was "demoted" with the intent to interfere with his entitlement to Program benefits. Courts cannot look to ERISA for the time limit to bring claims because Section 510 does not have a specific statute of limitations. Instead, the period is determined by the statute of limitations governing the most analogous state law cause of action. *Gavalik*, 812 F.2d 834, 843 (3d Cir. 1987). Section 510 claims sound in the employment relationship and are like claims alleging employment discrimination. *Id.* at 846.

As this Court knows, Pennsylvania workers have two years after an alleged adverse employment action to sue. *Raleigh v. Westinghouse Elec. Corp.*, 550 A.2d 1013, 1014 (Pa. Super. Ct. 1988), appeal denied 563 A.2d 499 (1989). Here, the only plausible adverse action Plaintiff pleads is being "demoted" to a Manager position in December 1999 (although he also alleges that he willingly accepted this position and considered it a "Special Assignment"). Doc. No. 1, ¶¶ 6, 62.

At best, Plaintiff had until the end of 2001 to bring a claim pursuant to Section 510 for this alleged discriminatory action.  Even if Plaintiff could somehow overcome the insufficiencies in his pleadings to claim that this "demotion" was taken intentionally to deprive him of the benefits of the Program, he cannot state this decades-old claim now, nearly twenty years after the alleged adverse action was taken.  *Colitas v. Aventis Cropscience USA Holding II, Inc.*, 02-cv-932, 2002 U.S. Dist. LEXIS 15110 (E.D. Pa. Aug. 12, 2002) (dismissing with prejudice a Section 510 claim based on a termination allegedly done to deprive the plaintiff of benefits that was done more than two years before the plaintiff filed the complaint).

### III.    CONCLUSION

Plaintiff's Complaint, and the exhibits attached, show only that Plaintiff wants more benefits under the top hat plan established for a select group of workers.  He acknowledges that he was designated into the Program and then de-designated under Program terms he includes in his pleading.  ERISA does not allow an award of damages based on Plaintiff's desires and the plain language of the Complaint and the Program documents demonstrate that none of Plaintiff's claims are viable and discovery will not uncover evidence establishing the elements of the claims.

As a result, Defendants ask this Court to dismiss Plaintiff's Complaint, with prejudice and mark this case closed.

Dated: October 7, 2021                                    Respectfully submitted,


                                                          */s/ Marla N. Presley*
                                                          Marla N. Presley
                                                          PA ID No. 91020
                                                          Marla.Presley@jacksonlewis.com
                                                          Laura Bunting
                                                          PA ID No. 307274
                                                          Laura.Bunting@jacksonlewis.com
                                                          JACKSON LEWIS P.C.
                                                          1001 Liberty Avenue, Suite 1000
                                                          Pittsburgh, PA  15222

412-232-0404
412-232-3441 *facsimile*

*Counsel for Defendants*