**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS J. KEVIN,  )  <br>    Plaintiff,  )  <br>  )  <br>vs.  )  <br>  )  <br>UNITED STATES STEEL CORPORATION  )  <br>EXECUTIVE MANAGEMENT  )  <br>SUPPLEMENTAL PENSION PROGRAM,  )  <br>J. MICHAEL WILLIAMS, ADMINISTRATOR,  )  <br>AND UNITED STATES STEEL CORPORATION,  )  <br>    Defendants.  | Civil Action No. 2:21-cv-00766  <br><br>Honorable Cathy Bissoon  <br><br>Electronically Filed |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Plaintiff Thomas J. Kevin, by and through his attorney, Térese M. Connerton, Esq, files the following Response Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint.

INTRODUCTION

Plaintiff Thomas J. Kevin (along with other managers) was informed in March 1998 that he was designated a Member of the USX Corporation Executive Management Supplemental Pension Program (now USS Corporation Executive Management Supplemental Pension Program) (hereinafter, referred to as "the Program"). This Program was maintained to provide additional retirement benefits outside of USX/USS's regular tax-qualified retirement programs to certain executives and managers. When Plaintiff inquired about retirement in the latter part

1

of 2019, he was first informed that he had been excluded from the Program as of March 1, 2000. A letter addressed to him by the then Administrator James Carney, dated February 23, 2000, advised him that he was de-designated from coverage, effective March 1, 2000, because of a change in his job position as of December 1, 1999. Mr. Kevin never received the letter. Mr. Kevin appealed the denial of his benefits from March 1, 2000 until December 31, 2016 (when the Program was discontinued). The loss of these sixteen (16) years from his benefit calculation under the Program has greatly diminished his expected retirement benefits.

Plaintiff's administrative appeal of the denial of his full benefits was denied on February 25, 2020. Thereafter, Plaintiff filed this Complaint. Defendants have filed a Motion to Dismiss all of Plaintiff's claims under Sections 502 (a)(1)(b), 502 (a)(3) and 510 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

**ARGUMENT**

I.  Standard of Review of Motions to Dismiss.

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the Plaintiff. Yarris v County of Delaware, 465 F. 3d 129, 134 (3d Cir. 2006). The Court, however, need not accept bold assertions or inferences drawn by the Plaintiff if they are unsupported by the facts set forth in the complaint. Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp v Twombly, 550 U.S. 544, 555 (2007). Rather "factual allegations must be enough to raise a right to relief above the

speculative level." Id., citing Papasan v Allain, 478 U.S. 265, 286 (1986). The Supreme Court in Twomble cautioned that "labels, conclusions and a formulaic recitation of a cause of action do not suffice, rather the complaint must allege facts suggestive of [the proscribed] conduct" that "are sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim". Applying these standards, Plaintiff has satisfied Rule 12(b)(6) pleading requirements in his Complaint and, thus, Defendants' Motion to Dismiss must be denied in its entirety.

II.     Plaintiff has properly plead his claim for relief under ERISA §502(a)(1)(B).

Defendants argue that Plaintiff has failed to state a claim under ERISA Section 502(a)(1)(B) because he cannot demonstrate that his right to benefits is legally enforceable against the plan (citing Hooven v Exxon Mobil Corp., 465 F3d 566, 574 (3d Cir. 2006)), and he also can only challenge the Program's Administrator's interpretation of ambiguous ERISA plan terms capable of more than one objectively reasonable interpretation (citing Zebrowski v Eronik Degussa Corp. Admin. Comm, 578 F. App'x 89 ,94 (3d Cir. 2014)). [1]  See Defendants Brief at 7. Here, Defendants claim that Plaintiff does not plead an allegation that the Program Administrator interpreted an ambiguous term of the Program. Rather, Defendants assert that

---

[1] Plaintiff notes that the Hoover case involved a Severance/Change in Control Plan that was governed by ERISA as an "employee welfare plan" and the Third Circuit held that "unilateral contract principles may not operate to create extra-ERISA causes of action." Id. The Zebrowski case involved both an ERISA plan and a top hat plan. Both Plans were in writing and the Court examined how benefits under both plans should be calculated.

Plaintiff questions how the terms of the Program define "Member" and seeks to "erase" the unambiguous condition precedent to the entitlement to benefits that a Key Manager must be

"designated by name as a Member" by the Compensation Committee. Because Plaintiff does not allege the relevant terms of the Program are ambiguous or does not challenge the action taken by the Plan Administrator under his authority to interpret plan terms, Defendants conclude that Plaintiff's Section 501(a)(1)(B) claim must be dismissed. See Defendants' Brief at 8.

Defendants have misstated Plaintiff's claim for benefits under Section 501(a)(1)(B). Plaintiff is not asking the Program Administrator to use his discretion to interpret the terms of the Program as written. Rather, Plaintiff avers that some critical parts of the Program were unwritten and not contained in the Program document. Specifically, the Program terms mention the de-designation of Members, but does not provide any other provisions relating thereto. Plaintiff claims that the terms relating to de-designations can be evidenced, in part, by examining the "course of conduct" under the Program. For example, Plaintiff's supervisors mentioned in their letters to the Plan Administrator that, during their extended service with USX/USS, no other similarly situated Members who accepted Special Assignments were ever de-designated and that, if a Member was de-designated, his supervisors would have been so informed. Plaintiff claims that the Program Administrator did not consider and address the various contentions he raised in his administrative appeal, supported by his supervisors' (Mr. Cera and Mr. Babcoke) letters. See Plaintiff's Complaint ¶¶ 29-30. The statements submitted in support of his appeal that were not addressed, including his lack of notice of his de-designation to Plaintiff, and the falsity of the purported reason provided in the letter since the declared reason did not comport with what had actually occurred when he accepted the Special

Assignment.  See Plaintiff's Complaint ¶¶ 31, 32, and 38-41.  The fact is that the denial failed to address Plaintiff's lack of receipt of notice or that was treated him differently than other Program Members who accepted Special Assignments. Plaintiff also alleges in his Complaint that the letter to Plaintiff was dated (February 2000) before any action was purportedly taken by the USX Compensation Committee in May 2000.   See Plaintiff's Complaint ¶¶ 42-44.

As Defendants' admit, "top-hat" plans are dealt with differently than other ERISA covered plans by the Courts, so that most benefit claims involving tax-qualified plans do not apply to these type of plans.  Top-hat plans are expressly exempt from most of ERISA's substantive requirements.  See Goldstein v Johnson Johnson, 251 F 3d 433, 436 (3d Cir. 2001). Top-hat plans may be wholly or partially in writing or not in writing as all.  The Courts in the Third Circuit have uniformly described top hat plans as unilateral contracts, governed by the breach of contract principles applied as a matter of federal common law.  In Re New Valley Corp., 89 F.3d 143, 149-151 (3d Cir 1996) and Kemmerer v ICT Americas inc., 70 F.3d 281,287 (3d Cir. 1995).

Defendants arguments to dismiss Plaintiffs' Section 502(a)(1)(B) claims relies on the language in the Program's written terms that the USX Compensation Committee has the sole authority under the Plan to designate key managers as Members.  Plaintiff does not dispute this.  The provision relating to de-designation by the USX Compensation Committee only describes accrual of benefits.  The provisions in the written Program do not describe what circumstances, if any, would warrant de-designation.  Plaintiff believes that discovery will provide information on the persons who would be designated and de-designated under the Program and the reasons therefore.  It is worth noting that the Compensation Committee

5

would not be in the position to independently make decisions as to which Key Managers should participate in the Program.  Rather executive and Human Resources management would make recommendations to the Compensation Committee. There is no dispute that Plaintiff was designated as a Member, was told he would accrue supplemental benefits under the Plan if he worked until he retired on or after age 60, as long as he was eligible for a pension under USS' qualified pension plan (unless consent was provided by USX).  See Plaintiff's Complaint ¶ 20. Plaintiff apparently was de-designated, but did not receive notice of the de-designation or provided with a true reason therefore. See Plaintiff's Complaint ¶¶ 4, 5, 6, and 9.

Here, the Defendants contend, in their Motion to Dismiss, that since the agreement was unilateral, Defendants were free to unilaterally terminate his participation without Plaintiff's consent or even notice to Plaintiff and his superiors.  Moreover, there did not have to be a "legitimate" reason for deciding to de-designate a Member.  Program Members could be terminated from participation in the Program for any reason, including that a manager had a grudge against him.  If Defendants' arguments are accepted, then the contract governing the Program would simply be an illusory promise, rendering the contract nugatory.

In reviewing other allegations in the Complaint in the light most favorable to Plaintiff, Defendants have failed to demonstrate that it communicated their intent to Plaintiff to terminate his participation in the Program on March 1, 2000.

Plaintiff never received a copy of Mr. Carney's letter until it was sent to him via e-mail by Tucker Kulp on October 28, 2019.  Despite several requests by Plaintiff's counsel for proof of mailing, no such proof has been provided.  In Lupyan v Corinthian Colleges, Inc., No. 13-1843 (3d Cir. Aug. 5, 2014), the Third Circuit ruled that, a "strong presumption" of receipt applies

6

when notice is sent by certified mail, but a "weaker presumption" arises if delivery is sent via regular mail.  But even if the mailbox rule is to be utilized to show notice was provided, evidence in a sworn statement is required by an affiant who has personal knowledge of the procedures in place at the time of the mailing.  See Kyhn v Skhinsei, 716 F. 3d 572, 574 (3d Cir. 2013).

Defendants argue that Plaintiff admitted that the notice was sent to the correct address and probably got lost.  But that is not the case.  Plaintiff speculated in his appeal what could have happened to the letter had it been sent and delivered.  Plaintiff has no knowledge of whether the notice was actually sent or when it was sent.

Defendants also contend that, since there are no ERISA fiduciary duties imposed on the Plan Administrator or the Program Sponsorof a top hat plan, there was no need to even provide notice to Plaintiff or his superiors. Plaintiff disagrees. Under any federal contract principles, notice of termination has to be provided to participants; otherwise, the contract would be unconscionable. Plaintiff asserts that he was promised by USX/USS to be paid supplemental retirement benefits and he accepted that promise by performance of his job until age 60.  He never received a copy of the written Program  or a Summary Plan Description, or heard anything about the fact that he could later be excluded from the Program.  He never received notice of his de-designation.  [2]

---

[2]  The letter from Mr. Carney said a change in job position resulted in his de-designation.  See Plaintiff's Complaint ¶4. Mr. Kulp in his letter to Plaintiff said that his position was changed to Manager-Commercial Product Development.  However, Plaintiff never worked as Manager-Commercial Product Development.  Moreover, when he accepted the temporary Special Assignment, he expected to return to his Division Manager job.  See Plaintiff's Complaint ¶ 6.

The Defendants also misconstrue Plaintiff's claims based on a violation of good faith and fair dealings. The inclusion of a duty of good faith and fair dealing in the performance of every contract is found in the UCC and Section 205 of Second Restatement. The UCC defines "good faith" as "honesty in fact in the conduct or transaction concerned." See UCC § 2-201 (19) (2000) (Official comments) and § 2-103 (1)(b). The Courts impose good faith and fair dealing to protect the parties reasonable expectations and intentions that existed at the time, they entered into the contract. The application of the doctrine in this case prevents Defendants who had the discretionary right to de-designate a Member from the Program from exercising it to protect the parties' reasonable contractual expectations.

III.    Plaintiff's Section 502 (a)(3) Claims for Equitable Relief Have Been Properly Plead

Defendants claim that Plaintiff cannot state a Section 502 (a)(3) claim for equitable relief because (1) he cannot show a contractual right to the payment of benefits, (2) his requested relief would divest the Compensation Committee of the authority it has been granted under the Plan and replace it with some non-existence criteria Plaintiff alleges should be implied in the Program, and (3) his claim is not based on any duty or obligation found in ERISA. See Defendants' Brief at 11. Defendants further allege that Plaintiff's Complaint rests upon his "theory" that the Plan Administrator's interpretation of the Program is unfair and incorrect because Plaintiff was not designated a Member of the Program during the years he believes he held positions warranting inclusion in the Program. Defendants' Brief at 12.

Again, Defendants misstates Plaintiff's claims under ERISA Section 502 (a)(3). First, Plaintiff pleads his §502 (a)(3) claims in the alternative. If this Court finds on review that Section 501 (a)(1)(B) claim cannot be sustained, the Court can examine his Section 502 (a)(3)

8

claims.  As previously stated herein, Plaintiff can show a contractual right to the payment of benefits.

Plaintiff also asserts that Defendants did not demonstrate notice was sent to him advising him that his participation was terminated in March 2000.  Plaintiff has alleged that he was told that he would receive benefits under the Program as long as he worked until he turned age 60.  He relied on the representations provided to him by Mr. Paul Wilheim (President of USS) and Mr. Koloski (General Manager of Gary works).   See Plaintiff's Complaint ¶25.  Plaintiff was not advised that he was designated by the Compensation Committee, rather USX management had decided to allow him to participate in the Program with other executives and key managers.  Plaintiff reasonably relied on these representations made.  The form he signed to participate in the Program did not say that he could be de-designated nor did the executives who explained the benefits under the Program mention that he could be de-designated by the Compensation Committee if he changed positions or for any other reasons.  See Plaintiff's Complaint ¶ 53.  Plaintiff was lulled into believing that as long as he stayed employed by the Company in a manager position until he was at least age 60, he would be entitled to receive the Program's benefits.  These were representations that materially omitted the essential fact that he could be de-designated. These omissions went to his continued eligibility to accrue benefits.  The representations made, therefore, were incorrect.  Even though Plaintiff did seek a copy of the Program terms or a summary of the terms, he was not given the information.

Moreover, Plaintiff's supervisors clearly stated, in support of his administrative appeal, that all Key Managers participating in the Plan who accepted a temporary Special Assignment were allowed to continue participation in the Program.  The supervisors also stated

9

unequivocally that they should have been advised of his de-designation and indicated that they could have taken actions to reverse the termination of his coverage under the Program. See Plaintiff's Complaint ¶¶ 29 and 30.

Defendants argue that no material affirmative "misrepresentations" were made. Although Plaintiff states he was informed he would receive benefits as long as he continued to work for USX/USS until age 60, that statement was correct because Plaintiff does not allege that a promise was made that he would be eligible to accrue benefits his entire career. See Defendants' Brief at 14 -15. But Plaintiff alleges that the statements made to him can (and were) reasonably be interpreted that his supplemental benefits under the Program would continue to accrue until his retirement on or after age 60. Indeed, when he sought to be provided with the plan document or a description of the benefits, he was told "not to worry" since his bonuses and years of continuous service would increase over the years until his retirement. Plaintiff's Complaint ¶ 25. Thus, contrary to Defendants' assertion, the information provided to him was inconsistent with the terms of the Plan that provided benefits would not accrue if he was de-designated.

Defendants cite In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 229 (3d Cir. 2009), in support of the proposition that, even misleading statements are not enough to support an equitable claim unless "there is a substantial likelihood that it would mislead a reasonable employee in making a adequately informed retirement decision" or "a harmful decision regarding benefits". See Defendants' Brief at 15. Plaintiff has alleged in his Complaint that, during his tenure at USX/USS/USSK, Plaintiff had been asked by several other competitive companies to join as a manager or executive, but he refused the offers based on the enhanced

10

retirement benefits that he believed he would receive under the Program. See Plaintiff's Complaint ¶¶ 27 and 53.

Defendants also allege that, if Plaintiff's ERISA Section 502 (a)(3) claims depend on his allegations that he was not provided with complete information when he was designated as a Member of the Program, his only remedy is a claim under Section 502 (a)(1)(A) for relief provided in Section 502 (c). See Defendants' Brief at 15. The conundrum is that, because the Program constituted a "top hat" plan, the only disclosure obligations that the Defendants have under ERISA is to electronically file a statement with the Department of Labor as described in 29 C.F.R. § 2520.104-23. No plan document or summary plan description or benefit statements are required by law to be provided to participants. Indeed, as previously stated, no written document is even needed. Thus, Plaintiff is effectively precluded from filing a claim under ERISA Section 502(a)(1)(A).

Defendants claim, relying on Jordan v Fed. Exp. Corp., 116 F.3d 1005, 1016 (3d Cir. 1997), that ERISA plan participants "have a duty to inform themselves of the details provided in their plans." See Defendants' Brief at 15. Jordan is inapplicable here since it involved an ERISA plan that was required under ERISA to provide the Plan participants upon request with the Plan document and Summary Plan Description and these documents had been provided to Plaintiffs. Just as there is no legal requirement for the Program to make any disclosures to its participants, there is likewise no legal requirement for the Plaintiff to inform himself of the terms of the Program when he was not provided documents, even upon his request. This may have been improvident on Plaintiff's part, but he was not under a legal duty to do so. Defendants cannot blame Plaintiff for his "ambivalence" when they could have easily provided Plaintiff with

written Program information, the notice of the termination of his coverage thereunder, and a statement on the amount of supplemental benefits to which he was entitled under the Program. If Defendants had provided any notices, then this Section 502 (a)(3) claim may not succeed and Plaintiff (and his supervisors) would have had an opportunity to rectify the situation or, if not, Plaintiff could have been placed in another deferred compensation plan, or left his employment with USX/USS and went to a competitive employer.

Defendants also claim that Plaintiff has not adequately pled that he reasonably relied on material misrepresentations to his detriment by remaining employed by USS after he was de-designated, citing Curcio v John Hancock Mut. Life Ins., 33 F.3d 226,237 (3d Cir. 1994). See Defendants' Brief at 16-17. Defendants claim that, as an ERISA participant, Plaintiff had a duty to inform himself of the Plan terms and his claims are based on alleged actions he could have taken had he been so informed, it was not reasonably for rely on the incomplete information provided by the Company's executives, especially since Plaintiff is presumed to possess a higher level of sophistication on financial matters. See Defendants' Brief at 17. The reliance on the Curcio position is in opposite. The Curcio court case involved an ERISA-covered employee welfare plan which was required to provide Plan documents and Summary Plan Descriptions to participants (which in fact were provided). As previously stated, the top hat plan is not required to provide such information to participants and in fact did not.

Defendants' final argument is that Plaintiff has failed to assert "extraordinary circumstances", relying on Pell v EI. DuPont de Nemours & Co., Inc., 539 F.3d 292,303 (3d Cir. 2008). See Defendants' Brief at 17-18. Courts have not provided a rigid definition of "extraordinary circumstances." To support extraordinary circumstances, the Third Circuit has

12

required a showing of affirmative acts of fraud or similarly inequitable conduct by and employer.  See Kurz v Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996).  Defendants claim that Plaintiff's "extraordinary circumstances" are based on "his misplaced contentions that he and his supervisors were owed extra, specific information (not required to be provided pursuant to ERISA, unless requested…)" and Plaintiff had an affirmative obligation to inform himself of the terms and conditions required to realize benefits under the Program."

Defendants refer to the failures to provide notice of his de-designation as "reporting errors and disclosure violations." They were not that. The Defendants failed to provide notice to Plaintiff (or his supervisors) that his participation in the Plan had ceased. The fact is Defendants have the obligation to prove the notice of de-designation was actually mailed.  So far, despite several requests, no such proof has been proferred.  Therefore, the fact that Plaintiff speculated he could have received it had it been mailed to him is hardly an admission. Even in 1980, certified mail was readily available.  The failure to provide notice to Plaintiff (or his supervisors) prevented him (and his supervisors) from attempting to get back into the Plan. Moreover, as previously mentioned the reason given for the de-designation was incorrect.  His title was changed at the time without his knowledge and he never was offered that position or accepted it.

IV.     Plaintiff has sufficiently plead his claims Under ERISA §510.

Defendants allege that Plaintiff's Section 510 claim for inference cannot be sustained because he only pleads his "demotion" in 1999 as a potential adverse action taken by USS. Defendants state that Plaintiff is unable to show that this change was taken to deprive him of

13

benefits because his supervisor did not intend to impact his designation as a Member under the Program and Plaintiff willingly accepted that position.   See Defendants' Brief at 19.

Once again Defendants misconstrue Plaintiff's claim. Most reported ERISA Section 510 actions do involve a termination or other adverse employment actions taken against an employee that result in an adverse effect on benefits under a plan.  However, Plaintiff alleges in his Complaint several other actions taken by his employer, specifically de-designation from the Program, assigning him a position of Manager-Commercial Product Development when he accepted a Special Assignment (despite the fact that it was not intended that Plaintiff hold that position and he never did), and the failure to notify Plaintiff or his supervisor of his de-designation.  Most importantly, the letters supporting his appeals from Mr. Cera and Mr. Babcoke support the Plaintiff's claims that no other participants in the Program who accepted Special Assignments were ever de-designated from the Program.  See Plaintiff's Complaint ¶ 62. Plaintiff was not terminated (or even demoted); however, Defendants was made it look like the purported change in position did not warrant his continued participation in the Program. Plaintiff believes these allegations (if inferences are viewed in his favor) allow the claim to stand.

V.      Plaintiff's Section 510 Claim is not Time-Barred.

Defendant's final argument is that the Plaintiff's Section 510 claim is time barred since his "demotion" occurred outside the two-year statute of limitations for analogous employment discrimination claims.  See Defendants' Brief at 22 and 23. Plaintiff disagrees. His Section 510 claims did not accrue until, at the earliest on October 28, 2019, when he received notice of his

de-designation from Mr. Kulp and was forwarded the James Carney letter. See Plaintiff's Complaint ¶¶ 4 and 5.

The Section 510 claims are brought under ERISA Section 502(a)(3). The federal common law rules are applied in determining when the cause of action begins to accrue. The accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period. Courts have utilized the federal "discovery rule" when there is no controlling statute. See Miller v. Fortis Benefits Ins. Co., 475 F.2d 516, 518 (3d Cir. 2007). The Fortis court stated that this discovery rule has developed into the more specific "clear repudiation" rule whereby non-fiduciary claims accrue when a claim for benefits has been denied. Id. In either case, the two-year statute of limitations began to accrue at the earliest when Plaintiff found out he had been de-designated on October 28, 2019. See Plaintiff's Complaint ¶ 4.

CONCLUSION

Plaintiff's Complaint's causes of action should not be dismissed. The allegations in the Complaint must be accepted as true and all factual allegations must be viewed most favorably to Plaintiff. Discovery will allow Plaintiff to uncover evidence establishing all elements of his claims. Therefore, Plaintiff respectfully requests this Court to deny Defendants' Motion to dismiss in its entirety.

Dated: October 27, 2021               Respectfully submitted,
                                                                                   <u>/s/ Térese M. Connerton</u>
                                                                                   PA Bar No. 319715
                                                                                   LAW OFFICE OF TÉRESE M. CONNERTON
                                                                                   2605 Nicholson Road, Suite 2103
                                                                                   Sewickley, PA  15143
                                                                                   Telephone:  724-934-8605
                                                                                   Facsimile:  724-934-8601
                                                                                   Email:  terry@connertonlaw.com

                                                                                   **Attorney for Plaintiff**

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS J. KEVIN, ) | |
|      Plaintiff, ) | Civil Action No. 2:21-cv-00766 |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES STEEL CORPORATION ) | |
| EXECUTIVE MANAGEMENT ) | Honorable Cathy Bissoon |
| SUPPLEMENTAL PENSION PROGRAM, ) | |
| J. MICHAEL WILLIAMS, ADMINISTRATOR, ) | Electronically Filed |
| AND UNITED STATES STEEL CORPORATION, ) | |
|      Defendants. | |

**PROPOSED ORDER DENYING DEFENDANTS'**

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

AND NOW, this _____ day of _____, 2021, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. _____) and Plaintiff's Response to Defendants' Motion to Dismiss (Doc. No. _____), it is hereby ORDERED that Defendants' Motion is DENIED in its entirety.

_____
HONORABLE CATHY BISSOON
UNITED STATES DISTRICT COURT JUDGE