IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS J. KEVIN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES STEEL CORPORATION EXECUTIVE MANAGEMENT SUPPLEMENTAL PENSION PROGRAM, J. MICHAEL WILLIAMS, ADMINISTRATOR, AND UNITED STATES STEEL CORPORATION,<br><br>　　　　Defendants. | Civil Action No. 2:21-cv-00766<br><br>Honorable Cathy Bissoon<br><br>*ELECTRONICALLY FILED* |

## **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiff is dissatisfied with the amount of extra retirement benefits he received from the USS Corporation Executive Management Supplemental Pension Program. He does not like the written terms of the Program and the Compensation Committee's decision to de-designate him from the Program. He faults ERISA because it does not require top hat plans, like the Program, to send regular notices and other reporting documents like other ERISA retirement benefit plans do. He wants this Court to award him satisfaction—but does not offer a single legal or equitable argument to demonstrate that the Court has the authority to recalculate his retirement benefits and award him more money from the Program.

**I.　Plaintiff cannot add unwritten terms into the unchallenged written Program.**

There is no requirement under ERISA that top hat plans, like the one here, have a written plan. 29 U.S.C. § 1101. But if a top hat plan is in writing, the written terms must be interpreted in accordance with ordinary contract principles. *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 444 (3d Cir. 2001). If, as here, the terms of a top hat plan are admittedly unambiguous, the Court's

inquiry into the meaning of those terms ends with the terms themselves. *Senior Exec. Benefit Plan Participants v. New Valley Corp.*, 89 F.3d 143 (3d Cir. 1996) (addressing the factors that must be present to allow for parties to offer "extrinsic evidence" to clarify the meaning of a unilateral top hat plan contract—none of which exist here). Plaintiff agrees that the written instrument is unambiguous and gives control over all decisions about who is in and who is out to the Compensation Committee. Doc. No. 1, ¶ 20; Doc. No. 11, p. 4-5. And Plaintiff concedes that there are no written criteria governing how the selection is made, recognizing instead that the only people eligible for benefits are those "designated by name as a 'Member.'" *Id.* Plaintiff agrees with the discretionary process when he is designated as a Member—by the process written in the plan documents—but objects to the Committee's discretion when he is de-designated. These admissions, especially where the plan documents are attached to the Complaint, confine the Court's consideration to whether Defendants deviated from that inherently discretionary process.

Plaintiff claims that this Court should apply some unknown and unidentified reasons for de-designating "Members" that were not contained in the Program to come to a different conclusion. But Plaintiff has not—and cannot—point to any well-pleaded and supported facts to show that a single term fell outside the Program, let alone one that he can identify. With that, though the Court's examination is limited to the terms of the Program itself, Plaintiff wants to go on an expedition to try and conjure up the reasons for de-designation, all the while acknowledging that the decisions are at the Committee's discretion.

Plaintiff's argument that the process was too discretionary would have the Court remove the express authority to make Program Membership decisions from the Compensation Committee and re-do decisions reached decades ago. The Court cannot unravel the grant of authority within the written terms of the Program simply because Plaintiff believes that he should have always been

designated as a Member.  That finding would require the Court to write in criteria that falls outside the written plan.  *Goldstein*, 251 F.3d at 436 (concluding that ERISA top hat plan that granted authority to a plan administrator should not be disturbed).  The Court should reject Plaintiff's attempt to inject "unwritten" ambiguous contract terms and find, consistent with Plaintiff's allegations in the Complaint, that express, unambiguous terms of the Program were not breached when the Compensation Committee designated Plaintiff by name and when the same Committee later de-designated Plaintiff by name.

**II.      Good faith and fair dealing do not require that every participant be satisfied with the results of the Program designations.**

Plaintiff tries to work around the agreed-to written Program terms by claiming that the contract is illusory and thus unenforceable because the Compensation Committee is the sole decider.  But contracts giving one party absolute discretion to interpret the terms of an ERISA plan are enforceable based on common law contract interpretation.  *Willis Re Inc. v. Hearn*, 200 F. Supp. 3d 540, 552 (E.D. Pa. 2016).

Plaintiff next argues that Defendants violated the duty of good faith and fair dealing by writing the Program terms the way they did.  Plaintiff wants the Court to say that Defendants cannot exercise a right that he agrees they had—to select those who could participate—and find that his expectation that he would be forever designated trumps the written plan terms.  But the duty of good faith and fair dealing does not allow the Court to re-open the inquiry into the meaning of the plan terms simply because a participant is dissatisfied with his ultimate benefits determination.

Plaintiff does not show that there was any "dishonesty" or other bad faith that would allow the Court to find that the Program terms were breached.  Plaintiff admits he possessed accurate information about the Program from the time he was first designated as a Member.  He was told:

3

- He would receive benefits at retirement after age 60 based on his compensation when he was designated a Member (which he received), Doc. No. 1, ¶ 53;
- His benefits could change over time, *Id.* at ¶ 25; and
- That there were plan documents associated with the Program, *Id.*

Instead, he guesses, that a manager "may have had a grudge against him" or may have persuaded the Committee to let him back in. Doc. No. 11, p. 6-7. That is not enough, and Plaintiff cites no facts or case law to show that Defendants breached any duties owed under the Program. Instead, he received exactly what was promised: benefits based on his tenure as a designated Member because he retired after age 60.

IV.  **Plaintiff cannot use Section 510 to challenge plan determinations.**

Section 510 is used to remedy an adverse action, not challenge when, how, and why benefit determinations are made. Plaintiff wants to use Section 510 to challenge exactly that—a plan determination: his de-designation from the Program. This argument is unsupportable because it relies on substantive remedies unavailable under ERISA (that employers notify top hat plan participants ***and their supervisors*** when plan determinations are made). Doc. No. 11, p. 14. Plaintiff admits there is no authority supporting his position and brings the claim against parties he concedes are not properly named in that count. In moving to dismiss Plaintiff's Section 510 claim, Defendants pointed out that the claim could only potentially be viable against Plaintiff's former employer. Doc. No. 9, p. 19. Plaintiff did not address how the claim could proceed against either the Program or Michael Williams, other named Defendants. As a result, this Court should find that Plaintiff abandoned the claim against both the Program and Williams. *See, e.g.*, *Carswell v. Steak N Shake, Inc.*, Civil No. 2:19-cv-01580-CRE, 2021 U.S. Dist. LEXIS 139636, at *9 (W.D. Pa. July 27, 2021), *adopted by* 2021 U.S. Dist. LEXIS 150622 (W.D. Pa. Aug. 11, 2021) (finding that a dispositive motion should be granted as unopposed when a plaintiff fails to respond to the merits of the motion).

Instead, of showing a tangible adverse action by his employer, Plaintiff strains to manufacture something else to which he can tie his Section 510 claim by arguing that he can proceed based on his challenge to the designation and the calculation of his benefits. But Section 510 claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits." *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996). Plaintiff voluntarily accepted a Special Assignment within the Company and the Compensation Committee later determined he should no longer be designated a Member of the Program accruing additional benefits. This plan determination is not an adverse action that can support a Section 510 claim.

**V.     The Court cannot retroactively put Plaintiff back into the Program.**

Plaintiff must show now that a jury could find for him based on the facts alleged, not guesses. But Plaintiff fails to sufficiently pled facts necessary for this case to move forward because he relies on vague hypotheticals about what he would do if he could re-do things that already happened. For example, he argues in his brief that the alleged "failure to provide notice to Plaintiff (or his supervisors) prevented him (and his supervisors) **from attempting to get back into the Plan.**" Doc. No. 11, p. 13. Plaintiff understands that ERISA permits top hat plans and plan administrators to make the decision he disagrees with. He just wants a different result.

But neither Plaintiff nor the Court can decide as a matter of law now that Plaintiff or his supervisors could have persuaded the Committee to re-designate him at any time along the course of his career after his de-designation. Plaintiff admits that the Compensation Committee had considered Plaintiff for membership and found that he should be included for some time and not included after a certain point. Allowing Plaintiff to advance his claims to, in essence, get a re-do, under these circumstances would create obligations under ERISA that do not exist.

|  |  |
|---|---|
| Dated: November 3, 2021 | Respectfully submitted, |

*/s/ Marla N. Presley*
Marla N. Presley
PA ID No. 91020
Marla.Presley@jacksonlewis.com
Laura Bunting
PA ID No. 307274
Laura.Bunting@jacksonlewis.com
JACKSON LEWIS P.C.
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA  15222
412-232-0404
724-923-4160 *facsimile*

*Counsel for Defendants*
